## Combs v. W. O. Davis Sons Company, et al.

(Decided June 19, 1925.)

## Appeal from Perry Circuit Court.

1. Corporations—Statute for Collection of Stock Subscription Held Inapplicable, Where Subscriber, by Laches, is Precluded from Demanding Stock, or Where Canceled by Consent.—Procedure provided in Kentucky Statutes, section 543, for collection of stock subscription on failure or refusal to pay, has no application where subscription may be canceled by mutual consent, or where subscriber, by his laches, is precluded from demanding his stock.

2. Corporations—Stock Subscriber Held to Have Abandoned Subscription.—That subscriber to corporate stock continually declined to take it up because she thought enterprise would fail, and flatly refused to do so on final demand to pay, held to show an abandonment as between parties of her right to stock.

3. Corporations—Subscriber to Stock Barred by Laches from Asserting Claim to it.—Where subscriber to corporate stock continually declined to take it up or pay for it, and flatly refused to do so on final demand by other stockholders, whereupon they accepted her abandonment and transferred stock to third party for value, delay of five years in enforcing any claim she might have against corporation for the stock held laches in bar of any equitable action.

FAULKNER, STANFILL & FAULKNER for appellant.

WOOTTON, SMITH & WOOTTON for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

In August, 1915, W. O. Davis and his children, one of whom is the appellant herein and the remainder of whom are appellees, incorporated the W. O. Davis Sons Company with a capital stock of $10,000.00. W. O. Davis subscribed for eighty shares of this capital stock and each of his children for twenty-four shares. The corporation was formed to take over a building lot then owned by W. O. Davis and to build thereon a business house. W. O. Davis and his wife did transfer to the corporation the lot mentioned, and thereafter a business house was erected upon it, being completed in the spring of 1917. The appellant was one of the original incorporators of this company, was elected a director therein and acted as such down to a meeting of the

stockholders on May 1st, 1917, during which time she participated as such director in amending the articles of incorporation of the company, increasing its capital stock to $20,000.00. Although appellant had subscribed for her twenty-four shares of stock she never did and has not yet paid for the same although she did at the institution of this litigation and since tender to the company what she conceives to be the balance due from her on her subscription. The foregoing facts are admitted. Appellees further claim that during the period from the original organization of the company down to the meeting of May 1st, 1917, they and the company were continually calling on appellant to pay for her stock as cash for construction work was badly needed, but that appellant, thinking at that time that the venture was going to be financially disastrous, refused to take up her stock and pay for her subscription. Appellees say that finally at the meeting of May 1st matters came to a head. They testify that appellant was present at this meeting and that demand was made of her at that time for payment for her stock; that a stock certificate was made out in her name for her twenty-four shares and offered to her, but that she refused to take the stock or pay her subscription, and said that she did not want to have anything to do with the company; that thereupon her subscription was cancelled and the stock re-issued in the name of another child, one of the appellees herein, who paid cash therefor. Appellant denies all that appellees thus testify, but we think the evidence undoubtely sustains the appellees in this. One or two little things that appellant let drop in the course of her testimony, which consisted mostly of denials, convinces us that the appellees are giving the correct version of all that took place. For instance, on page 30 of the record we find appellant, in answer to a question whether or not she was willing to take her stock and pay for it, testifying thus: "Yes, sir, I am willing to take my part, I thought after they had settled down and quit fussing I would go on;" and on page 31: "Well . . . I told them I was willing to take it (stock) when they got settled down and quit racketing. . . . I told Rufe and told them when they would meet, and told them I would take stock if they would do right;" and on page 32, in answer to the question: "The reason you did not take the stock was because the boys were quarreling, was that it?" Appel-

lant said: "I told them I would wait until they settled down." After the May 1st meeting it seems to be admitted that a turn came in the affairs of the company and from that time on it prospered. Substantial dividends were earned from then until the institution of this suit in April, 1922. In the meantime, the additional stock authorized had been taken up by the stockholders as was also part of a second increase which raised the capital stock to $25,000.00. Although it is averred in the petition that the additional stock taken by the stockholders was watered stock and stock dividends, yet the evidence clearly shows that the corporation has received full value in cash or property for every share of stock it has issued. In April, 1922, appellant brought this action against the company and all of its stockholders, some of whom have since died or become insane, and are now represented by administrators or committees, to require the company to issue to her the twenty-four shares of stock she originally subscribed for, to debit her with her stock subscription and interest, and to credit this debit by the dividends she was entitled to on her twenty-four shares. For the balance of the debit she made the tender hereinbefore mentioned. She also asked for her proportionate part of any stock dividends declared, but as none were declared this branch of the case is no longer pressed. The lower court dismissed her petition and she has appealed.

Appellant insists that the only way she can be divested of her stock holdings is by the procedure described in section 543 of the Kentucky Statutes. That this section has no application to the facts of this case is clear. It provides for a procedure to collect a stock subscription where the subscriber has failed or refused to pay for the same and the company desires, or because of the rights of creditors in forced, to hold the subscriber to his subscription and to foreclose thereon. It has no application to a state of case where the subscription is and can be cancelled by mutual consent or where the subscriber by his laches is precluded from demanding his stock from the company. In the case of Boyd County Fair Association v. Eastham, 208 Ky. 368, 270 S. W. 12, certain original subscribers to the capital stock of the Boyd County Fair Association and certain original incorporators of that company brought suit to compel the company to issue to them the stock they had subscribed for, together with an accounting of dividends earned. In

denying them the relief they sought on account of their laches and conduct, fully set out in the opinion, this court said that the whole duty does not rest upon a corporation to see to it that subscribers for stock receive their certificates since it it not required to issue them except upon demand by the subscriber, and that a subscriber may by his conduct or laches be precluded from demanding his stock certificate.    This case quoted with approval the following excerpt from 14 C. J. 487:

> "Thus a suit to compel a corporation to issue a certificate of stock to plaintiff and for an accounting for dividends will be barred by laches if plaintiff, with knowledge that his alleged right was not recognized by the corporation, had delayed for a long time to enforce his claim, and during this time material evidence has been lost to the corporation, or third persons have acquired rights which would be materially affected by plaintiff's recovery."

In the case of Predestinarian Baptist Church v. United Baptist Church, 139 Ky. 110, 129 S. W. 546, we held that although laches is not pleaded a court of equity will refuse to enforce a stale claim, especially where it is without merit in fact.

Applying the principles of these cases to the one before us, we find that appellant, from the time of her subscription on, was continually declining to take up her stock because she then thought the enterprise was going to turn out disastrously, that when final demand was made upon her at the meeting of May 1st she flatly refused to take or pay for her stock. As between the parties, this constituted an abandonment of appellant's subscription. She knew that her stock was then transferred to a third party for value, but not until five years had passed and after the company had become financially prosperous and when all parties had acted on her abandonment, did she undertake to assert her rights. It is obvious that under such state of fact it would be unconscionable to permit appellant now to come in and claim her stock. Although laches was not pleaded, yet where the evidence shows, as here, that the subscriber, with knowledge that his alleged right is not recognized by the corporation, delays for five years to enforce his claim, during which time the rights of a third party have intervened and the project has been turned from a

threatened failure to a prosperous success, equity should not enforce such a claim.

It therefore follows that the judgment of the lower court dismissing appellant's petition is correct, and it is affirmed.