# Hugo Paoli, Appellant, v. Thomas Mason, Appellee.

## Gen. No. 43,201.

Heard in the third division of this

198

court for the first district at the October term, 1944. 
Opinion filed February 14, 1945. Released for publication March 5, 1945.

PETER D. GIACHINI and ALPHONSE CERZA, both of Chicago, for appellant.

CHARLES C. WOOSTER, of Chicago, and THOMAS MASON, *pro se,* for appellee; HOWARD B. BRYANT, of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Hugo Paoli, a tavern keeper, filed a complaint in the superior court of Cook county to recover damages suffered as a result of the claimed revocation of a liquor license by Thomas Mason, president and ex officio liquor control commissioner of the Village of Northfield, and his refusal to reissue the license. Issue was joined. A trial before the court without a jury resulted in a finding and judgment for the defendant and plaintiff appeals.

Since June 1, 1934 plaintiff operated a tavern on Happ Road in the Village of Northfield, hereinafter called the Northfield Tavern, and since October 1938 he also operated a tavern outside the village, hereinafter called the Skokie Tavern. To the rear of the barroom in the Northfield Tavern is a hall once used as a dance hall, which has been converted into a warehouse, and which the plaintiff rents to a beer distributor named Gus Erickson. Between 11:30 and 12:00 p. m. on Saturday, June 28, 1941 defendant was in the Northfield Tavern. With him was Dr. R. B. Mundel, who lives in Evanston and who has an office in Winnetka. They were standing at one end of the bar. At the other end there were several young men. Present also were Jim Paoli, the manager of the tavern and a nephew of plaintiff, Walter Shleif, the bartender, Arthur George Bess, who worked for Erickson in the

beer warehouse, Ed Petersen, who also worked for Erickson as a driver of a beer truck, Fred Petersen, who was then 19 years of age and a brother of Ed Petersen, and Joe Jingles, who was then 17 years of age. Ed Petersen purchased a glass of beer for Fred and this glass of beer was served to Fred. Defendant claims he saw the bartender sell a bottle of beer to Fred Petersen, a minor. The testimony of defendant as to this incident is corroborated by Dr. Mundel. Ed, Fred and the bartender testified that the bottle of beer was bought by Ed, who paid for it and then handed it to his brother, the minor, to take home. Fred Petersen and Joe Jingles walked out of the tavern toward an automobile which Fred had parked. Fred was carrying the bottle containing the quart of beer. Defendant followed the boys out of the tavern and asked Fred whether he purchased the beer in the tavern. Defendant stated that Fred replied: "Sure I did." Defendant directed Fred to wait and removed the ignition key in Fred's car so that Fred could not move his car. Defendant then returned to the tavern and by telephone called chief of police Ed Clapper. When Clapper arrived, he and defendant talked with the boys. Arthur George Bess was standing about 10 feet away and heard the conversation. Then Clapper went into the tavern and asked Shleif, the bartender, to come outside. Clapper testified that Shleif admitted selling a quart of beer to Fred Petersen. Chief of police Clapper took the two boys to his office in the village hall. There Fred printed a statement that he purchased a quart of Rheingold beer; that he paid 30¢ for the beer to the bartender; that the bartender gave him the beer and that the bartender did not ask him if he was a minor. Fred Petersen testified that he made the statement because he was threatened with being locked up for the night. At the time of the alleged sale of the bottle of beer and the serving of the glass of beer to Fred, plaintiff was not present in the tavern.

No steps were taken to prosecute any of the parties concerned for alleged violation of any State law or of any village ordinance. The next day, Sunday, June 29, 1941, defendant returned to the tavern at about 11: 00 a. m. He asked the bartender and manager to sign a statement admitting the sale of the beer to Fred. They refused. Defendant took the license. In so doing he intended to revoke the license and the parties so treated it. On Monday, June 30, 1941, defendant advised the Illinois Liquor Control Commission by telephone that he had revoked the license. That day, or the next day, plaintiff and his attorney came to defendant's law office in Chicago. Defendant told plaintiff and his attorney that when he revoked the Northfield Tavern license he did not appreciate that the effect of his act was to revoke the Skokie tavern license as well. He testified that he expressed concern of plaintiff losing his means of earning a livelihood and that he would be glad to help, in working the matter out so that plaintiff would not lose his Skokie tavern license. A day or two later plaintiff and his attorney returned to defendant's Chicago law office. It was then that plaintiff signed the following letter, addressed to defendant and dated July 1, 1941:

"On June 28, 1941, you charged me with violation of the Dram Shop Act, and revoked my Local Liquor License for my tavern on Happ Road, in the Village of Northfield. You later told me that you didn't want to jeopardize my state license for my tavern on Skokie Boulevard. You, therefore, reinstated my license in the Village of Northfield and permitted the same to expire in good standing upon my agreement to surrender all right to renew my Local Liquor License in the Village and my agreement not to operate a tavern in the Village without a new license.

"This is to advise you that in consideration of the above and foregoing, I hereby and herenow renounce all right to a renewal of my Local Liquor License to

run my tavern in the Village of Northfield. This letter is not to be construed as a denial of my right to apply in the future for a new license in case one should become available. I will not operate in the Village without having first procured a new license.''

Plaintiff's attorney testified that the letter of surrender was ready when he and his client arrived at defendant's office and that he had nothing to do with drafting it. Plaintiff testified that he signed the letter on advice of his attorney; that his attorney told him it was the thing to do; that the letter was prepared while he and his attorney were in defendant's office; that defendant's secretary was called in; that defendant and plaintiff's attorney dictated the letter; that plaintiff's attorney dictated part and defendant part; and that the secretary then typed it and that he signed it. After the letter was signed, defendant notified the State Liquor Control Commission that plaintiff's license had been restored, thus saving plaintiff's Skokie tavern license. Thereafter plaintiff demanded a license from defendant. The village ordinance provided for the issuance of only five retail liquor tavern licenses. Nevertheless, there were six taverns in operation. Plaintiff's license was not the last one issued. There was evidence that at that time licenses were issued semi-annually and that the new license period was to commence July 1, 1941. In the Fall of 1941 plaintiff filed an application for a license. On December 31, 1941 plaintiff notified defendant and the Illinois Liquor Control Commission that an appeal was being taken from defendant's alleged refusal to reissue plaintiff's license. Hearings were had from time to time on the appeal and on June 9, 1942 the commission entered a finding that defendant had no just cause or reason to refuse to issue the license. From this order defendant appealed to the circuit court. On October 29, 1942 the circuit court sustained the order of the Illinois Liquor Control Commission. At

the time of the events recounted, the village ordinance regulating the sale of alcoholic liquor provided for an annual fee for a license to sell at retail of $500. An amendment adopted November 12, 1942, after the order affirming the action of the Illinois Liquor Control Commission, provided that the license period for retail dealers be the calendar year from January 1 to the succeeding December 31, and that the annual license fees be paid in full in advance. Following the order of the circuit court, plaintiff was granted a license and he reopened the tavern on November 10, 1942. He was required to pay $500 for a license to cover the period until December 31, 1942. On July 3, 1943 plaintiff filed the instant complaint. As a result of a pretrial conference, it was ordered that the testimony of the witnesses as shown in the transcript of the proceedings before the State Liquor Control Commission be considered by the court ''the same as if the witnesses had testified herein.'' In addition to reading the transcript, the trial judge heard the testimony of plaintiff as to his alleged damages. He claims that he lost $4,000 as a result of ''the improper acts'' of defendant in revoking his license and in refusing to reinstate it. Plaintiff's theory of the case is that defendant had no jurisdiction to revoke his liquor license; that defendant wilfully and maliciously revoked the license; that defendant, later, under duress, caused plaintiff to surrender his license; that still later he wilfully and maliciously refused to reissue the license for the ensuing license period; that defendant committed a trespass when he took the frame and license certificate from plaintiff's premises; that plaintiff is entitled to damages therefor; that in the alternative defendant in revoking and reissuing a liquor license acts as ministerial officer, and that he is liable to the plaintiff even though he did not act wilfully and maliciously; and that he should be allowed damages for the period during which his place of business

was closed. Defendant's theory of the case is that he had the power to revoke plaintiff's liquor license and to refuse to reissue it; that he exercised that power in good faith and for cause and was performing a governmental function; that the surrender of the license was voluntary on the part of plaintiff and upon advice of his counsel; that as a matter of law applied to the facts in this case, the gist of plaintiff's cause of action is defendant's failure to reissue the license; that the antecedent revocation for cause and voluntary surrender have no connection therewith and are barred by the statute of limitations; that he was justified in not issuing a license because of the provisions of the ordinance and statute; and that plaintiff has not established a cause of action against him.

The General Assembly under its police powers had authority to provide for the issuance and revocation of liquor licenses. This power was exercised by the passage of the Liquor Control Act in 1934. By this Act the power was delegated to the Local Control Commissioner (or Commission if there was more than one officer). Sec. 1 of art. 1 of the Liquor Control Act (par. 94, ch. 43, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 68.001]) provides that the "act shall be liberally construed to the end that the health, safety and welfare of the People of the State of Illinois shall be protected, and temperance in the consumption of alcoholic liquors shall be fostered and promoted by sound and careful control and regulation of the manufacture, sale and distribution of alcoholic liquors." Sec. 1 of art. IV (par. 110 [68.017]) gives the village president and board of trustees the right to determine the number, kind and classification of liquor licenses and to make regulations and restrictions upon the issuance of such licenses. Sec. 2 of art. IV (par. 111 [68.018]) makes the president the local control commissioner and provides that he shall be charged with the administration in his jurisdiction "of the appropriate pro-

visions of the Act and of such ordinances and resolutions relating to alcoholic liquor as may be enacted." Sec. 3 of art. IV (par. 112 [68.019]) gives the local liquor control commission the power "to grant and revoke for cause all local licenses issued to persons for premises within his jurisdiction." Sec. 1 of art. VI (par. 119 [68.026]) provides that a license shall be purely a personal privilege and shall not constitute property. This section further provides that:

"Any licensee may renew his license at the expiration thereof provided he is then qualified to receive a license and the premises for which such renewal license is sought are suitable for such purpose; and provided further that the renewal privilege herein provided for shall not be construed as a vested right which shall in any case prevent the city council or village president and board of trustees or county board, as the case may be, from decreasing the number of licenses to be issued within its jurisdiction."

Prior to the amendment approved July 17, 1941, the section above quoted provided that the renewal privilege should not be construed as a vested right which should in any case prevent the local commissioner from decreasing the number of licenses to be issued within his jurisdiction. This amendment substituted the words "president and board of trustees" for the words "local commissioner." Sec. 5 of art. VII (par. 149 [68.056]) provides that the local commission may revoke any license issued by it if it determines that the licensee violated any of the provisions of this Act, or any valid ordinance or resolution enacted by the particular city council, president, and board of trustees or county board, or any applicable rule or regulation established by the local commission which is not inconsistent with the law. Sec. 8 of art. VII (par. 153 [68.060]) gives any person interested the right to appeal to the state commission from any order or action of the commission refusing to grant a license

or revoking a license. Sec. 2 of art. VI (par. 120 [68.027]) provides the qualifications one must possess in order to secure a liquor license. Sec. 3 of art. X (par. 185 [68.093]) provides that every act or omission of whatsoever nature constituting a violation of any of the provisions of the Act, by any officer, director, manager or other agent or employee of any licensee, if said act is committed or omission is made with the authorization, knowledge or approval of the licensee, shall be deemed and held to be the act of such employer or licensee, and said employer or licensee shall be punishable in the same manner as if the act or omission had been done or omitted by him personally. Sec. 4 of art. X (par. 186 [68.094]) provides for the revocation of a license when the licensee has been convicted of any violation of the Act. Sec. 5 of art. X (par. 187 [68.095]) provides for the revocation of a liquor license whenever any "officer, director, manager or other employee in a position of authority of any licensee under this Act shall be convicted of any violation of this Act while engaged in the course of his employment. . . ."

Plaintiff maintains that a reading of the statute shows that if the licensee violates the law, the license can be revoked, but that if the statute is violated by an agent, the latter must be convicted of the violation before the license may be revoked. Plaintiff states that there is nothing in the record showing that if the agent did violate the law, it was with his (plaintiff's) authority, knowledge or approval, and that hence the license could not be revoked under sec. 185 of the Act. He points out that if there was a violation, it was committed by the bartender and that he was not prosecuted, and suggests that before defendant could revoke the license a conviction of the bartender was necessary. Plaintiff also asserts that defendant did not show that the liquor purported to be sold to the minor was intoxicating; that the duty of defendant was fixed

and certain; that he had no discretion, power or right to revoke the license until the bartender had been charged with selling liquor to a minor and convicted; that the ascertainment that the bartender had been convicted of selling liquor to a minor would empower defendant to revoke the license; that in ascertaining the fact of conviction there would be no need for the exercise of discretion or judgment; that consequently the act is not judicial, but purely ministerial; that a licensee has the right to receive a renewal of the license at an ensuing license period, providing there has been no change in the facts or circumstances; that the act of renewing a license is a ministerial function not involving the exercise of discretion; that the conduct of defendant was wilful, wanton and malicious; that he had no jurisdiction to revoke the license; that he had no right to revoke it before there was a conviction of the bartender; that there was one license too many; that he was out "to get rid of" one of the licenses; that he improperly took down the frame and license certificate; that there was "pressure" used to get the minor to sign the statement; that the bartender was never charged with an offense; that defendant did not endeavor to ascertain whether the liquid in the bottle was in fact intoxicating; and that in the hearing before the State Liquor Control Commission defendant exhibited considerable feeling. Plaintiff urges that in the alternative, "whether the conduct of the defendant was or was not wilful, wanton or malicious is immaterial because, it is respectfully submitted, the defendant at the time he revoked plaintiff's license and at the time he refused a renewal of said license, was acting as a ministerial officer." Plaintiff also states that the weight of the evidence supports the conclusion that liquor was not sold to a minor on June 28, 1941, and argues that he must recover from the defendant, or he will be without a remedy.

Sec. 112 of the Act provides that the Liquor Control Commission shall have the power, function and duty to revoke licenses for cause. Sec. 149 provides that the local commission may revoke any license if it determines that the licensee has violated any provisions of the Act. Sec. 150 provides that the revocation of the local license shall automatically revoke the State license, without which a licensee is not permitted to operate in the State. It was the duty of defendant as the local liquor control commissioner to revoke licenses "for cause." That there are two methods of procedure open to the local commissioner is clearly recognized by sec. 3 of art. VII (par. 147 [68.054]), which reads:

"If a licensee shall be convicted of the violation of any of the provisions of this Act, or his license shall be revoked and no appeal is taken from said order of revocation or any appeal taken therefrom is decided adversely to the licensee, said bond (if one is required) shall thereupon be forfeited. . . ."

The Liquor Control Act is a comprehensive Act covering the control, regulation, manufacture, sale and distribution of alcoholic liquors. There is no provision of the Act which makes a conviction in a criminal proceeding for violation of the Act or the local ordinances a necessary condition to a revocation of a license. Plaintiff concedes that if a licensee violates the law, the license may be revoked, but argues that in the case at bar the licensee has not violated the law, and urges that the grant of power to revoke a license "for cause" can only mean the ground stated elsewhere in the Act. Plaintiff also states that the gist of his action is the unlawful revocation of his license, and that the revocation being illegal, all the things that followed were a nullity. Plaintiff states that if the licensee violates the law, the license can be revoked, but that if the statute is violated by an agent, before a

license can be revoked, the agent must be convicted of the violation. We cannot agree with this construction. A prosecution under the criminal statutes would be by the state's attorney in the name of the people and not by the Local Liquor Control Commission. The agent (bartender) would be entitled to a trial by jury and he would have to be proved guilty beyond a reasonable doubt before he could be convicted. A prosecution by the village, through its attorney, for violation of an ordinance would have to be proved by a preponderance of the evidence and the bartender would be entitled to a jury trial. We do not believe the act requires a conviction of the agent (where the alleged violation is by the agent) before the license of the principal may be revoked. We are convinced from a reading of the record that defendant acted honestly and used his best judgment in revoking the license on Sunday, June 29, 1941. A few days later he withdrew the revocation. At that time plaintiff signed a document surrendering his license. We find that plaintiff was not subjected to any duress at the time he surrendered his license. Defendant treated plaintiff with all due consideration and was kind to him in what he did. Both plaintiff and defendant recognized that there was grave danger that plaintiff would lose the liquor license for the Skokie tavern. At the time of the hearing before the State Liquor Control Commission the parties all recognized that it was unlawful to sell intoxicating liquor to minors. There was no issue raised as to whether the beer was in fact intoxicating. The parties at the hearing before the State commission assumed that it was intoxicating. The question as to whether the beer was intoxicating was not raised by anyone in the hearing on the appeal in the circuit court, nor at the trial of the instant case. Defendant in revoking the license, in withdrawing the revocation of the license and then accepting the surrender thereof was acting in good faith and in accord-

ance with what he believed to be his duty in the premises. When plaintiff sought to have the license reissued to him, defendant acted properly. At that time the ordinance permitted the issuance of only five retail licenses and five retail licenses were outstanding. Defendant would be violating the village ordinance if he granted a license to plaintiff after the revocation or surrender of the license theretofore issued. We are of the opinion that a local liquor control commissioner is not liable to the licensee for his official acts in revoking or refusing to reissue a license. In *People v. Courtney*, 380 Ill. 171, the Supreme Court said (p. 179):

''The general rule of liability applying to judges applies alike to all officers exercising *quasi* judicial powers, and they are exempt from liability for error or mistake of judgment in the exercise of their duty in the absence of corrupt or malicious motives.''

We are satisfied that the doctrine announced in the *Courtney* case is applicable to the acts of defendant in his official capacity as liquor control commissioner as shown by the record of the instant case.

Under the circumstances shown by the record, defendant did not commit a trespass in taking the framed license certificate. Defendant had the right to revoke the license. The method he adopted was to enter the premises and take down the license. Two or three days later defendant surrendered his license. It is unnecessary to consider the point urged by defendant that plaintiff's cause of action is barred by the statute of limitations. The record does not show neglect on the part of defendant, or any wilful, wanton or malicious act. It shows that defendant was endeavoring to conscientiously perform his duties, and that far from showing malice toward plaintiff, defendant did everything within his power to enable plaintiff to retain the license to operate his other tavern.

If any criticism is to be leveled at defendant it is that he considered that plaintiff was not a proper person to operate a tavern in Northfield, but that he was a proper person to operate a tavern outside of that village. Because of these views the judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

KILEY and LUPE, JJ., concur.