Coven Distributing Company, Inc., Appellee, v. City of Chicago et al., Appellants.
People of State of Illinois ex rel. Sidney Kromer, Trading as Broadway Amusement Company, Appellee, v. City of Chicago et al., Appellants.

Gen. Nos. 45,469, 45,470.

Opinion filed April 2, 1952. Re-hearing denied and modified opinion filed April 16, 1952. Released for publication April 16, 1952.

JOHN J. MORTIMER, Corporation Counsel, of Chicago, for appellants; L. LOUIS KARTON, Head of Appeals and Review Division, and HARRY H. POLLACK, Assistant Corporation Counsel, both of Chicago, of counsel.

JOSEPH WILLIAM BERNSTEIN, of Chicago, for appellees; ODE L. RANKIN, of Chicago, of counsel.

MR. JUSTICE LEWE delivered the opinion of the court.
These cases involve an automatic amusement machine known as the Bally Hook Bowler, hereafter called the Bowler. The controversy arises from the refusal of the City Collector of the City of Chicago to issue auto-

matic amusement machine licenses for the use of the Bowler on the ground that the Bowler is a modern variety of bagatelle or pigeonhole commonly known as pin games and that it violates section 193–26 of the Municipal Code which reads:

"It shall be unlawful for any person to keep or use in any place of public resort within the city any tables or implements for any game of bagatelle or pigeonhole.

"The term 'bagatelle or pigeonhole,' as used in this section, shall mean a game played with any number of balls or spheres upon a table or board having holes, pockets or cups into which such balls or spheres may drop or become lodged and having arches, pins, and springs, or any of them, to control, deflect or impede the direction or speed of the balls or spheres put in motion by the player, and shall ·include the modern variety of bagatelle or pigeonhole commonly known as pin games."

The Bowler is constructed on a wooden table about 115 inches long and 24 inches wide. This table which constitutes the playing surface has a railing along the front and sides and rests on four legs about 34 inches high. At the rear of the playing surface is a glass-covered panel containing an electrical device for computing the score of a player which is shown on an illuminated score board. Below and in front of the score board are ten bowling pins about 3½ inches long. The top of each bowling pin is suspended from an automatic setting rack and the bottom of the pin is about an inch above the playing surface of the table. Beneath the bowling pins are 23 electrical contacts all protruding slightly above the playing surface. On the playing surface a short distance in front and to the right side of the bowling pins appear the words "Hook Lane" and a curved arrow pointing toward the bowling pins. The Bowler is played with a circular metal object about 2¼ inches in diameter and ¾ of an inch thick which is projected from the hand of the player. As it slides

across the playing surface it passes over the electrical contacts below the bowling pins. Each side of the playing surface is hollowed out and the gutter so formed is designed to catch the missile when it slides from the playing surface. When the missile travels through the Hook Lane its direction is deflected towards the pins and its speed is impeded, unbeknown to the player, by an electromagnet concealed beneath the playing surface. Insertion of a coin unlocks the machine so that it may be played.

Plaintiff's principal witness, an electrical engineer who helped to design the Bowler, described the metal object used by a player as a "puck or cylinder." He testified in substance that the puck is supposed to take the place of a bowling ball; that the target [bowling pins] simulates actual bowling and that when the puck passes over the electrical contacts underneath the pins it causes the pins to retract.

A captain of police of the City of Chicago called by defendant testified that as part of his work for more than thirty years he had investigated bowling games, shuffle games and pinball machines; that he has examined several hundred various types of games; that the Bowler is now used where heretofore pinball games were used for similar purposes, and that in his opinion the Bowler is a gambling device.

A policeman of the City of Chicago also testified in behalf of defendants that he was familiar with pinball games and had "probably seen machines of this type fifty thousand times"; and that the Bowler is similar to a game known as Shuffle Alley where a disc propelled by hand is used; that the games are played in places of public resort.

██ Plaintiffs say that no "balls or spheres" are used in the operation of the Bowler. A ball is defined in Webster's New International Dictionary, Second Edition, as "any round or roundish body or mass . . . or a missile of various rounded shapes." We

451

think that the shape of the metal object used in playing the Bowler falls within the purview of the Ordinance. On oral argument it was conceded that the protruding electrical contacts on the playing surface of the Bowler are depressed by the weight of the "puck" as it passes over them and then they spring back into their normal position. We can see no substantial difference in the structural features of the Bowler and other machines of this kind. See *Berman v. Prendergast,* 338 Ill. App. 580. In our opinion the Bowler is essentially a modern variety of bagatelle or pigeonhole commonly known as pin games and the use is therefore prohibited by the Ordinance.

Plaintiff Coven Distributing Co. filed an action for a declaratory judgment under section 57½ of the Civil Practice Act. The judgment based upon the findings of the trial court ordered that a writ of mandamus issue commanding defendants to issue automatic amusement machine licenses for the Bowler and restrained the defendants from interfering with the operation of the Bowler within the City of Chicago or confiscating it.

Plaintiff Kromer brought an action for a writ of mandamus directing defendants to issue licenses for the Bowler and, as in the *Coven* case, judgment was entered in favor of plaintiff directing that a writ issue commanding defendants to issue automatic amusement machine licenses for the Bowler and restraining them from interfering with the operation or confiscating any of the Bowlers that may be found in places of public resort within the City of Chicago during the pendency of an appeal.

Defendants insist that availability of mandamus will bar a suit for an injunction and that since mandamus is the proper remedy the trial court should have refused declaratory relief.

An examination of the record discloses that the complaint in the *Kromer* case prays for only a writ of mandamus. The complaint in the *Coven* case asks for a

writ of mandamus and also an injunction, but in neither case are any facts alleged warranting the issue of an injunction. This court has repeatedly held that in cases of this character when the remedy of mandamus is available a court of equity has no jurisdiction and that allegations of irreparable injury and hardships do not in any wise change the rule. See *D. Gottlieb & Co. v. City of Chicago,* 342 Ill. App. 523, and cases there cited.

█ In Anderson on Declaratory Judgments the author says, section 69, p. 192: "If a common-law cause of action has already matured, and the customary processes of law are open and available, and they are ample and adequate, unhampered and not complicated, they should generally be adopted rather than an application for a declaration of rights. That is to say, where a cause of action has already accrued that is justiciable in a well-recognized and traditional form of action, declaratory relief will not be granted as a rule." When Coven filed its complaint its cause of action had matured. The only issue presented was whether the use of the Bowler was prohibited by the Ordinances of the City of Chicago. As we understand it the Declaratory Judgment Act was not designed to supplant existing remedies but is an alternative or additional remedy to facilitate the administration of justice. See Anderson, Declaratory Judgments, Section 3, page 12.

█ The issue in the *Coven* case is simple and a mandamus proceeding provides an ample and adequate remedy for its determination. In our view the trial court should not have granted declaratory relief. *Goodyear Rubber Co. v. Tierney,* 411 Ill. 421.

For the reasons given, the judgment in each case is reversed and the causes are remanded with directions to enter judgment in favor of the defendants and against the plaintiffs.

*Reversed and remanded in each case with directions.*

KILEY, P. J. and FEINBERG, J., concur.