James C. Young, Sr., Plaintiff-Appellant, v. James A. Hansen, Chief of Police of the City of Elgin, Illinois, Lt. Charles P. Miller, Officer Kenneth Luecht, Officer Richard Lund, Officer Al Grantham, Officer Robert L. Schroeder, Officer R. W. Heneise, Robert L. Brunton, City Manager of Elgin, Illinois, City of Elgin, a Municipal Corporation, Elgin Y & C Cab Co., Inc., a Corporation, Edward Darnell and Ward Lowry, Defendants-Appellees.

Gen. No. 68–174.

Second District.

July 3, 1969.

1

MORAN, J., dissenting.

L. Louis Karton, of Chicago, and Edward Puklin, of Elgin, for appellant.

Morgan, Brittain, Ketcham & Imming, John P. Callahan, Jr., and Gordon D. Abbott, of Elgin, for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court.

The plaintiff, James C. Young, Sr., commenced this action for a declaratory judgment against the municipal defendants, City of Elgin, Robert L. Brunton, City Manager of Elgin, James A. Hansen, Chief of Police of the City of Elgin, Lt. Charles P. Miller, Officers Kenneth Luecht, Richard Lund, Al Grantham, Robert L. Schroeder and R. W. Heneise, members of that City's Police Force, and also against Elgin Y & C Cab Co., Inc., and two of its agents and employees—Edward Darnell and Ward Lowry. The municipal defendants, and the Cab Co., together with Darnell and Lowry, filed separate motions to dismiss, which were allowed. The plaintiff elected to stand on his complaint, and judgment was entered against him. This appeal followed.

The only questions raised are based on the pleadings. In essence, the plaintiff's complaint alleged that the plaintiff had received an operator's registration card from the City of Elgin, permitting him to operate a taxicab business in the City, and that he had been engaged in operating his cabs until March 17, 1967, when the defendant, Hansen, revoked his operator's registration card, allegedly because the plaintiff had been found guilty of disorderly conduct on April 27, 1967. Other charges, however, were apparently pending against the plaintiff on the date of the revocation. The complaint also set out

3

the municipal ordinances governing the issuance of the operator's registration cards.

The ordinances provided that no registration card should be issued to any person not of good moral character, or who is a repeated violator of the Illinois Motor Vehicle Laws; and that "Operator's registration cards shall be revoked by the Chief of Police and cancelled for repeated violations of traffic laws or ordinances." The complaint further alleged that no written charges had been served on the plaintiff; that no hearing had been held prior to the revocation; and that the plaintiff had demanded the restoration of his operator's registration card, but that the defendants, Hansen and Brunton, had rejected his demands and had refused to restore it.

The complaint then set forth allegations of conspiracy on the part of the defendants, and alleged that they entered into a conspiracy and scheme maliciously to harass and persecute him in the operation of his taxicab business, and to destroy the value of his business, and that they wrongfully and without justification, under the guise of enforcing the statutes of the State of Illinois and ordinances of the City of Elgin, arrested and prosecuted him with the intention of procuring the revocation of his operator's registration card in order to eliminate him as a competitor of the defendant, Elgin Y & C Cab Co., Inc. Various acts in furtherance of the conspiracy were then alleged. The complaint prayed for a declaration that the plaintiff be entitled to a restoration of his operator's registration card; for an injunction to restrain the defendants from engaging in a conspiracy against the plaintiff to destroy his business; and for a separate trial to determine the damages sustained by the plaintiff, due to the alleged conspiracy.

The municipal defendants charge that the plaintiff is not entitled to the remedy of a declaratory judgment in that he is really seeking a remedy available in a mandamus action, an injunction act, and an action for money

4

damages. The defendants' motions charge that a declaratory judgment action was not intended to provide a remedy where there are other existing, adequate, recognized remedies, and they cite: Goodyear Tire & Rubber Co. v. Tierney, 411 Ill 421, 430, 104 NE2d 222 (1952); Goldberg v. Valve Corp. of America, 89 Ill App2d 383, 391, 233 NE2d 85 (1967); Stern v. Material Service Corp., 44 Ill App2d 198, 214, 194 NE2d 511 (1963); Coven Distributing Co., Inc. v. Chicago, 346 Ill App 448, 453, 105 NE2d 137 (1952).

■ The Declaratory Judgments Act (Ill Rev Stats 1967, c 110, par 57.1) does not become inapplicable merely because relief or remedies other than a declaration of rights are sought. Subsection (1) provides that a declaration of rights may be made "whether or not any consequential relief is or could be claimed." Subsection (2) provides that the relief of a declaration of rights may be sought alone, "or as incident to or a part of a complaint . . . seeking other relief as well . . . ." Subsection (3) relates to the granting of further relief based upon a declaration of rights after the declaration has been made.

■ The Historical and Practice Notes to section 57.1 (SHA ch 110, pages 126–135) indicate that the declaratory judgment remedy provides a new, additional, cumulative and alternative procedural method for the judicial determination of substantive rights and duties. It may, or may not be that a mandamus action could have afforded the plaintiff at least part of the relief he sought; but, even so, the availability of such a remedy is not sufficient to bar his right to seek a declaratory judgment. In American Civil Liberties Union v. Chicago, 3 Ill2d 334, 353, 121 NE2d 585 (1954), the court stated that the contention that the availability of affirmative relief by way of mandamus bars an action for declaratory judgment "is refuted by explicit language of section 57½ (now 57.1) of the Civil Practice Act." The court then explained its

5

holding in Goodyear Tire & Rubber Co. v. Tierney, supra, stating: "The case in no way suggests that an action for declaratory relief is defeated by the mere existence of another form of action which could presently be employed."

The plaintiff's complaint details a legal dispute between the plaintiff and the several defendants sufficiently, in this regard, to withstand a motion to dismiss. The availability of other remedies and the intention to obtain additional relief, as evidenced by the prayer in the complaint, do not preclude the form of action chosen by the plaintiff. The language of the statute and the interpretation given it by our courts evince a purpose to maintain the scope of declaratory judgment relief broad and liberal and not restricted by technicalities. If there is no particular reason for denying the use of this procedure when another remedy is available, the declaratory judgment action should also be available. Elm Lawn Cemetery Co. v. City of Northlake, 94 Ill App2d 387, 391, 392, 237 NE2d 345 (1968); La Salle Cas. Co. v. Lobono, 93 Ill App2d 114, 118, 236 NE2d 405 (1968); Koziol v. Village of Rosemont, 32 Ill App2d 320, 327, 328, 177 NE2d 867 (1961).

The complaint sets forth the provisions of the ordinance, which state that a registration card shall be revoked and cancelled for repeated violations of traffic laws or ordinances. It further alleges that the plaintiff's registration card was revoked on March 17, 1967, on the stated ground of one disorderly conduct finding—which took place on April 27, 1967, approximately one month after the registration card was revoked. This seemingly incongruous allegation is later explained by the allegation that the plaintiff had earlier pleaded guilty to the charge, upon receiving assurance that the plea would not be used as the basis of any action to take away his licenses or permits to engage in the taxicab business. The complaint asserts that the action is the result of the con-

6

certed conspiracy among the several defendants, and it specifically enumerates a number of acts allegedly done as a result of and in furtherance of the conspiracy.

██ These acts, and the facts set forth in the complaint, are sufficiently particular to state a cause of action. By its very nature, a conspiracy, if one exists, normally precludes the one who is its object from being in a position to charge, with complete particularity, the details of the conspiracy. In a civil case, the acts alleged to have been done in pursuance of a conspiracy, and not the conspiracy itself, are the gist of the action. B. R. Paulsen & Co., Inc. v. Lee, 95 Ill App2d 146, at 151, 152, 237 NE2d 793 (1968); Ammons v. Jet Credit Sales, Inc., 34 Ill App2d 456, 465, 181 NE2d 601 (1962). We believe that the plaintiff's complaint, seeking relief by means of a declaratory judgment from the effects of the alleged conspiracy to put him out of the taxicab business, states a good cause of action.

The municipal defendants also moved to dismiss the complaint on the grounds of the Local Government and Governmental Employees Tort Immunity Act (Ill Rev Stats 1967, c 85, par 1–101, et seq.). The defendants cite the following sections of this Act:

"Sec. 2–201. Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."

"Sec. 2–206. A public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization where he is authorized by enactment to determine whether

or not such authorization should be issued, denied, suspended or revoked."

"Sec. 2–104. A local public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization where the entity or its employee is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."

■ There have been very few cases dealing with the scope and meaning of the Immunity Act. An extensive analysis of the Act is found in Tort Liability of Local Governments and their Employees: An Introduction to the Illinois Immunity Act, David C. Baum, 1966 Ill Law Forum 981. The author points out that the immunity afforded by section 2–201 to a public employee in exercising discretion is "in determining policy," and concludes that this immunity is intended to protect fairly high level officers in making important policy determinations. (P 999.) The author further points out that the court decisions of this State had previously limited the discretionary immunity to good faith errors and not to instances of determinations based upon malice. See: Fustin v. Board of Education of Community Unit Dist. No. 2, 101 Ill App2d 113, 121, 242 NE2d 308 (1968); Keane v. City of Chicago, 98 Ill App2d 460, 462, 240 NE2d 321 (1968); Paoli v. Mason, 325 Ill App 197, 209, 59 NE2d 499 (1945). We agree with the conclusions reached by the author, that in view of the prior Illinois law, the immunity afforded by section 2–201—while not expressly referring to the question of malice—extends only to those types of acts not resulting from corrupt or malicious motives. (P 1004.)

The author, on the same page, observes, however, that malicious acts should not be actionable if they fall within

8

the specific immunity sections other than section 2–201. Sections 2–104 and 2–206, relied upon by the defendants, are such sections. They purport to grant immunity, without exception, for acts of issuing, denying, suspending or revoking a license or certificate where the public official is authorized to make the determination of what is to be done. While we are not certain that such a conclusion is warranted—particularly in view of the prior decisions of this State extending immunity in such cases only where discretion is exercised in good faith and not as a result of wanton or malicious motives—these particular sections are not determinative of the issue before this court.

The complaint alleges that the various defendants entered into a scheme and conspiracy maliciously to harass the plaintiff in the operation of his business; to arrest and prosecute him; to abuse process to the end that his business should be destroyed and he should be eliminated from competition.

Section 2–202 of the Immunity Act provides:

"A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton negligence."

And section 2–208 provides:

"A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts maliciously and without probable cause."

We believe that in view of the sound public policy expressed in the foregoing sections and expressed in the prior decisions of this State, a public official may not hide behind the cloak of immunity if he maliciously and intentionally misuses the powers of his office.

9

■ Consequently, we believe that the plaintiff's complaint adequately states a cause of action. The revocation of the registration card, charged in the complaint, was but one final step in carrying out the alleged conspiracy. We do not believe that sections 2–104 and 2–206 can afford protection from the charge of conspiracy alleged in the complaint, which also asserts acts in furtherance of the conspiracy of the type which are the subject matters of sections 2–202 and 2–208. Whether or not the allegations have foundation in fact, can only be determined upon a trial on the merits and such issue is not before us on this appeal. For the foregoing reasons, the cause is reversed and remanded for further proceedings not inconsistent herewith.

Reversed and remanded.

ABRAHAMSON, J., concurs.

MORAN, P. J., dissents.

MORAN, P. J., dissenting:
The majority concludes that the complaint filed by the plaintiff herein states a cause of action, (one in civil conspiracy), and that the trial court therefore erred in not allowing the complaint for declaratory judgment to stand. I respectfully, but most strongly, disagree and thus dissent.

A cursory reading of the complaint, necessarily appended hereto [1] for a complete understanding, automati-

---

[1] "1. Plaintiff is the licensed owner of four taxicabs in the City of Elgin, Illinois and on to wit September 10, 1965, received from defendant, City of Elgin, a municipal corporation, an Operator's Registration Card, pursuant to the provisions of Chapter 28, section 28–1302(b) Municipal Code of Elgin.

"2. He has been engaged in the taxicab business under the name and style of Red Top Cab Co., and has individually operated a taxicab in said City of Elgin until said Operator's Registra-

cally raises the impression that the pleader is attempting to allege three separate causes of action in a single-count

tion Card, No. 16, for the year 1967, was revoked on to wit, March 17, 1967 by defendant, James A. Hansen, Chief of Police of the City of Elgin.

"3. The stated ground for said revocation was that plaintiff had been found guilty of disorderly conduct on April 27, 1967.

"4. Chapter 28, sections 1301–1308, inclusive, of the Municipal Code of Elgin relating to Taxicabs is attached hereto as Exhibit 'A' and by reference is expressly made a part hereof. Said ordinance contains, in Section 28–1302(b), the following provision:

> " 'No such registration card shall be issued to any person who is not of good moral character; or who is a repeated violator of the Illinois Motor Vehicle laws. Operator's registration cards shall be revoked by the Chief of Police and cancelled for repeated violations of traffic laws or ordinances.'

"Section 28–1308 provides as follows:

> " 'Penalties. Any person violating any of the provisions of this ordinance shall be fined not less than Five Dollars ($5.00) nor more than Two Hundred Dollars ($200.00). Such violations shall also be cause for revocation of licenses herin (sic) required.'

"5. No written charges have been served on plaintiff. No hearing has been held prior to the said revocation.

"6. Defendant, Robert L. Brunton, City Manager, has refused to take action to restore the plaintiff's Operator's Registration Card and has informed plaintiff's attorney by letter that the action of defendant Hansen 'is final as far as the City of Elgin's administration is concerned,' a copy of which letter is attached hereto, marked Exhibit 'B' and expressly made a part hereof. Plaintiff has demanded the restoration of said Operator's Registration Card but defendants Hansen and Brunton have rejected his demands and refuse to restore said Card.

"7. Plaintiff alleges, upon information and belief, that theretofore and thereafter defendant James A. Hansen, Chief of Police of the City of Elgin, Illinois, Lt. Charles P. Miller, Officer Kenneth Luecht, Officer Richard Lund, Officer Al Grantham, Officer Robert L. Schroeder, Officer R. W. Heneise, Robert L. Brunton,

11

complaint—one for injunctive relief, another founded on mandamus and the third based upon a civil conspiracy.

City Manager of Elgin, Illinois; City of Elgin, a municipal corporation, Elgin Y & C Cab Company, Inc., a corporation, Edward Darnell and Ward Lowry, agents and employees of said corporation, entered into a conspiracy and scheme maliciously to harass and persecute said plaintiff in the operation of his taxicab business, and to destroy the value of his said taxicab business, and wrongfully and without justification, under the guise of enforcing the statutes of the State of Illinois and the ordinances of the City of Elgin, to arrest and prosecute said plaintiff, and to abuse the judicial process in the prosecution of false and groundless charges and to obtain convictions of violations by plaintiff of said statutes and said ordinances with the intention of procuring the revocation of plaintiff's Operator's Registration Card and to obtain revocation of the owner's license to 'conduct a business for the transportation for hire in taxicabs,' and thereby to eliminate plaintiff as a competitor of said Elgin Y & C Cab Company, Inc., a corporation, in the taxicab business in the City of Elgin, Illinois; and the defendants agreed among themselves to aid and abet each other in the carrying out of the said conspiracy and scheme. In the process of said conspiracy and scheme, defendants have committed the following acts:

"a. On to wit, July 9, 1966, plaintiff received a phone call from persons at the Elgin State Hospital requesting a taxicab to be sent to them to transport them from said Elgin State Hospital to the Greyhound bus terminal, 222 Dundee Avenue in Elgin, which bus terminal is owned and operated by plaintiff. As plaintiff approached the Elgin State Hospital, driving one of his taxicabs, a Yellow Cab owned and operated by defendant Elgin Y & C Cab Company, Inc. drove away with said persons who had telephoned plaintiff and for whom he was .calling. After plaintiff complained of this theft of his customers, defendants, Ward Lowry and Edward Darnell, agents and employees of said Elgin Y & C Cab Company, Inc., swore out complaints against plaintiff to wit, on July 27, 1966, (1) for criminal damage to property, No. D 3474 and (2) for reckless driving, No. D 3475. Plaintiff was arrested and taken to the police station and was required to make bond to obtain his release. After several appearances by plaintiff in Court over a period of several months, said

12

From a procedural standpoint, the form of the pleading is against section 33 of the Civil Practice Act (Ill Rev Stats

charges were dismissed on to wit, October 24, 1966 for want of prosecution with leave to reinstate.

"b. Thereafter, on November 2, 1966 defendants Ward Lowry and Edward Darnell, agents and employees of said Elgin Y & C Cab Company, Inc., swore out new complaints, No. D 6219 and D 6207, based on the same incident as aforesaid, again charging plaintiff with reckless driving and criminal damage to property. Plaintiff was served by police officer Richard Lund at the direction of the defendants, Hansen and Miller, and was arrested and taken to the police station and again required to give bond for his appearance. Thereafter at the suggestion of the Assistant State's Attorney, Mr. Gene Armentrout, the charges of criminal damage to property and reckless driving were dismissed and reduced to disorderly conduct and a fine of $15.00 and costs was entered and suspended. Said plea of guilty to disorderly conduct was not entered by plaintiff until he received assurances from the defendants above named that the filing of said plea would not be used as the basis of any action by the said defendants affecting any of plaintiff's licenses or permits to engage in the taxicab business.

"c. On to wit, February 23, 1967, plaintiff was arrested by Officer Al Grantham and charged with driving too fast for conditions (No. 67M–4008). The said defendant Grantham, without cause or justification, testified in a distorted and inaccurate manner resulting in a finding on April 14, 1967 of guilty and a fine of $10.00 and costs, which plaintiff paid.

"d. On to wit, April 14, 1967, at about 6:00 a. m., plaintiff was using one of his taxicabs with the flag up, and the taxicab plainly marked 'not for hire' and was stopped by Officer Robert L. Schroeder and charged with driving a taxicab without having a city permit, but said officer released him when he pointed out the 'not for hire' sign. Later, at the express directions of the defendant, Hansen, plaintiff was arrested by said Officer Robert L. Schoeder (sic) in his place of business, the said bus terminal, and ordered to lock up said bus terminal and he was taken into a patrol wagon to the police station and there given a Notice to Appear (No. 67M–8299) and a complaint charging him with driving a taxicab without a permit. Said charge was thereafter on May 22,

13

1967, c 110, § 33) wherein it states that *separate* causes of action upon which *separate* recovery may be had shall

1967 dismissed by Judge John A. Krause for want of prosecution.

"e. On to wit, June 5, 1967, plaintiff was driving friends of his to the Elgin State Hospital after he had closed the bus terminal, in his wife's private car, not a taxicab. He was stopped by Officers R. W. Heneise and Kenneth Luecht, in the hospital grounds and his guests were questioned. They informed the police officers that they were not riding as fare-paying passengers, but were riding with him as guests. Thereupon, said police officers in the hearing of plaintiff and his guests, communicated to the police station by radio and then stated to plaintiff that they 'regretted that they couldn't make the charge stick.' Plaintiff was served with a Notice to Appear as a result of said incident. Charges have since been filed (No. 67M–13569) and are pending and undisposed of on plaintiff's plea of not guilty.

"f. Plaintiff has sent to defendant Hansen applicants for driver's licenses, who have applied for driver's licenses under Section 28–1302(b) as aforesaid, which applicants had applied to him for employment as taxicab drivers but defendants Hansen and Miller have repeatedly procrastinated and delayed and have told said applicants to return again and again and have attached conditions, such as that only probationary permits would be issued to said applicant(s) and that if said probationer should have one traffic violation within one year, said permit would be immediately revoked. Such conditions are not contained in the ordinance of the City of Elgin and have been imposed solely to harass and persecute plaintiff.

"g. Various applicants for drivers' positions with plaintiff's cab company have tried to obtain driver's permits but defendants Hansen and Miller have persistently interposed unwarranted and unreasonable delays and have thereby discouraged said applicants from proceeding with their applications for operator's or driver's licenses. Various applicants were refused permits when they informed defendants Hansen and Miller that they sought to work for plaintiff, but said applicants have had no difficulty in obtaining licenses to drive for Elgin Y & C Cab Company, Inc., a corporation, or for other employers.

14

be stated in *separate* counts. It is wrong to assert that a declaratory judgment action is not susceptible to the

"h. Plaintiff's wife, Kathryn, on to-wit, April 14, 1967, applied for an operator's or driver's registration card. Notwithstanding that defendants have no valid legal reason for refusing to issue to her such a card they have refused to issue one, but have issued only a 'conditional permit' by virtue of which she is driving a cab for plaintiff on a part-time basis.

"8. Plaintiff has an investment of over $100,000.00 in the Greyhound bus terminal and in the four taxicabs which he owns and operates. He is a native of South Elgin and has been engaged in business there for many years and has resided there continuously until June 1, 1967 and now resides with his wife and three children in the City of Elgin. He is a person of good reputation and is being oppressed, persecuted and harassed by the defendants in the furtherance of their conspiracy and scheme to destroy his taxicab business and ruin him financially.

"9. The refusal of defendants Hansen and Brunton to restore plaintiff's Operator's Registration Card and to permit him to exercise the rights and privileges to which he is entitled, pursuant to Section 28–1302(b) Municipal Code of Elgin, deprives plaintiff of his constitutional right to engage in the lawful business of driving a taxicab and deprives him thereby of his property in violation of said ordinance; and without due process of law in violation of the provisions of Sections 2 and 13 of Article II of the Constitution of Illinois and deprives him of his property without due process of law and of the equal protection of the law in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

"10. Plaintiff has exhausted his local remedies. A justiciable dispute and an actual controversy exists between the plaintiff and the defendants Hansen and Brunton, and the City of Elgin, Illinois, a municipal corporation, concerning the plaintiff's right to the restoration of his Operator's Registration Card and the rights thereunder and it is therefore just and proper that the Court declare the rights of the parties.

"WHEREFORE, PLAINTIFF PRAYS:

"a. That the action of the defendants, Hansen, Chief of Police and Brunton, City Manager, and of the City of Elgin, a munici-

15

same procedural rules governing forms of pleadings as other actions. This is especially true when we consider the fact that declaratory judgment had its birth in the Civil Practice Act creating the very rule (Ill Rev Stats 1967, c 110, § 57.1). It must be kept in mind that declaratory judgment is a remedy for a cause of action and is not a cause of action itself.

More important than the procedural aspect is the substantive question involved. Does the complaint state a cause of action for civil conspiracy as concluded by the majority? I feel that it does not and will confine my comments to this one facet (although I believe there to be many additional reasons for affirming the trial court's decision).

pal corporation, in revoking and refusing to restore plaintiff's Operator's Registration Card may be declared by this Court to be unreasonable, arbitrary, confiscatory, discriminatory, unlawful, null and void and of no effect, and in violation of the Constitutions of the State of Illinois and of the United States of America.

"b. That judgment be entered herein finding and declaring that plaintiff is rightfully entitled to have said defendants issue to him Operator's Registration Card pursuant to Section 28–1302(b) of the Municipal Code of Elgin.

"c. That after the rights of the parties have been declared by the Court, as aforesaid, an injunction issue to restrain all of the within named defendants from harassing, persecuting and oppressing plaintiff and from engaging in a conspiracy and scheme amongst themselves, maliciously to deprive said plaintiff of his right to operate a taxicab and from interfering with him in the operation of the taxicab business which he is presently operating and from seeking by said conspiracy and scheme to destroy plaintiff's said taxicab business and from aiding and abetting each other in the carrying out of said conspiracy and scheme.

"d. That after the rights of the parties have been declared by the Court, as aforesaid, a trial may be had to determine damages sustained by the plaintiff herein by virtue of the acts of the defendants herein in engaging in said conspiracy and scheme and in the wrongful revocation of plaintiff's Operator's Registration Card, and that judgment may be entered in favor of the plaintiff and against the defendants for such damages as plaintiff shall be found entitled to."

16

Damages is an essential element in a cause of action based upon a civil conspiracy. As a matter of fact, the gist of the action is the damage arising out of a civil wrong, and not the conspiracy itself, that creates the cause of action. Pustelniak v. Vilimas, 352 Ill 270, 277, 185 NE 611 (1933); B. R. Paulsen & Co., Inc. v. Lee, 95 Ill App2d 146, 151–152, 237 NE2d 793 (1968). See also, 16 Am Jur, Conspiracy, §§ 43, 44, 53, 58, and the supplements thereto.

Damages, in some common-law actions, may be presumed and therefore it is not necessary to plead the same. Civil conspiracy is not such an action. Since damages cannot be presumed, it then becomes necessary that the plaintiff plead, not only the fact that he has been damaged, but also the amount he believes he has been damaged. Nowhere in the body of the complaint nor in the prayer for relief has the plaintiff set forth the amount in which he has been damaged. The defect cannot be cured by stating that defendants may file interrogatories or take discovery depositions. Where the plaintiff fails to plead an element necessary to his cause of action the result is that he has failed to *state* a cause of action. This is not being overly technical; it is as basic as a foundation to a house. Were it not for the basic or substantive rules, not the procedural rules, what would prevent the filing of a newspaper clipping setting out a particular event in place of a complaint?

Therefore, I dissent from the majority opinion in this case wherein it is claimed that the plaintiff has stated a cause of action based upon civil conspiracy.