**Dora Greiver Stern, Appellant, v. Material Service Corporation, an Illinois Corporation, et al., Appellees.**

**Gen. No. 48,608.**

First District, Third Division.

October 23, 1963.

Nat M. Kahn, of Chicago, for appellant.

Albert E. Jenner, Jr., Benjamin Z. Gould and Kenneth J. Burns, Jr., all of Chicago (Thompson, Raymond, Mayer & Jenner, and Schradzke, Gould & Ratner, of counsel), for appellee, Material Service Corporation.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken from an order of the Circuit Court of Cook County striking and dismissing plaintiff's amendment to the complaint and entering judgment for costs in favor of the defendant.

The plaintiff, Dora Greiver Stern, filed a complaint against the defendant, Material Service Corporation, on September 1, 1959. That complaint was in two counts. Count one was brought by the plaintiff as administratrix of the estate of her mother, Bessie Greiver. Count one was dismissed because the plaintiff had been removed as the administratrix of the estate. No question is raised in this court with reference to the action of the trial court concerning that count.

Count two was brought by the plaintiff in her individual right as an heir to her mother's estate. In that count the plaintiff alleged that on January 27, 1919, Material Service Corporation was organized as an Illinois corporation with a capitalization of $20,000 and was authorized to issue 800 shares of $25 par value common stock; that the plaintiff's mother, Bessie Greiver, who was then also known as B. Greiver, was unable to read or write English and that she "through her duly authorized agent, her daughter, the plaintiff, . . . executed the original subscription agreement for the formation of the defendant corporation" and subscribed for the purchase of 170 shares of common stock; that the plaintiff "as her mother's duly authorized agent" signed her mother's name, "B. Greiver," to the agreement; that Bessie Greiver sometime during the early part of 1919 "caused . . . $4,250 to be paid to the defendant pursuant to her aforesaid subscription"; that she became the owner of 170 shares of common stock, which was 21¼% of the original authorized stock issue. The complaint further alleges that Bessie Greiver did not either transfer or authorize any other person to transfer the 170 shares of the common stock of the defendant corporation. She further alleges that Bessie Greiver had three children: the plaintiff, Simon Greiver, also known as Simeon B. Greiver, and Fanny Friedberg. The plaintiff then

200

alleged that since the death of her mother, her brother had disclaimed all interest in the stock and her sister had assigned whatever rights or interests she had therein to the plaintiff, so that the plaintiff became the owner of the entire 21¼% of all the shares of the corporation. The disclaimer in the original complaint stated that Simon Greiver had repeatedly denied that his mother had ever subscribed or paid for any shares of the stock of the defendant corporation or that she ever owned or had title to any such shares. The complaint also alleged that the Material Service Corporation denies all the claims of the plaintiff and that an actual controversy exists between the parties. The plaintiff prayed for a declaration of rights that plaintiff's mother had subscribed for 170 of the 800 authorized shares of Material Service Corporation stock; that she caused the subscription price to be paid; that she was the owner of 170 shares at the time of her death on April 8, 1938 and at that time she was the owner of 21¼% of all of the outstanding shares of the corporation; that the plaintiff's brother had disclaimed all interest in the shares; that the plaintiff's sister had assigned all her interest in the shares to the plaintiff; and that plaintiff had thus become the owner of all of the shares. No other relief was prayed.

On November 4, 1959 the defendant filed a motion to strike and dismiss the complaint. The motion raised several points. (We will make no reference to the points raised concerning count one since that is not being considered by the court.) One point raised was that plaintiff's claim was barred by limitations and laches appearing on the face of the complaint; another, that the case was not a proper case for a suit for declaratory judgment since there was no controversy between the plaintiff and the defendant which would be terminated in whole or in part by the declaration sought; and also that the proceeding was designed to foment, not terminate, litigation.

The motion to strike and dismiss the complaint was argued before the trial court on May 26, 1961. During the argument counsel for the plaintiff asked leave to file an amended complaint. The court on that day entered an order striking the complaint without leave to amend, and dismissing the suit. On June 23, 1961, after notice, over defendant's objection the court allowed plaintiff leave to file a petition which asked leave to file an amended complaint. In that petition it was stated that "the new matter set forth in this amended complaint overcomes the alleged defenses of laches, the Statute of Limitations and the omission of necessary parties as defendants," and the plaintiff asked leave to add as additional parties defendant Fanny Friedberg and "Simon Greiver, also known as Simeon Greiver" and that summons issue against them.

On June 30, 1961 the plaintiff filed an amended unverified complaint for declaratory judgment and additional relief. The amended complaint is in a single count and generally follows count two of the original complaint. It alleges that the decedent, in accordance with the subscription list, had promised to pay $4,250 for the 170 shares and that the decedent "some time during the early part of 1919 caused said sum of $4,250 to be paid to the defendant pursuant to the aforesaid subscription." In that complaint there is the further allegation that two certificates totaling 130 shares of the original capital stock of the defendant were issued to Bessie Greiver, "who is described in these certificates as 'B. Greiver.'" Copies of the certificates were attached as exhibits, and it was further alleged "to the best knowledge, information and belief of the plaintiff" that no certificate was issued to Bessie Greiver for the remaining 40 shares of the 170 shares for which she alleged she had subscribed. In the original complaint in count two it was alleged that S. B. Greiver since Bessie's death in 1938

202

had repeatedly denied that his mother had ever subscribed for or owned any shares of stock of the defendant. In the amended complaint that allegation was omitted and it was alleged that after citation proceedings were commenced in 1949 S. B. Greiver denied that his mother ever subscribed or paid for any shares of the defendant and he claimed that he was the person described as "B. Greiver" in the original subscription list. In the amended complaint it is also alleged that during the last 18 years of her lifetime, from 1920 to 1938, Béssie "was repeatedly orally assured" by S. B. Greiver "not to worry about her shares in Material Service Corporation, and that he was taking care of the shares for her." It was further alleged that Bessie had confidence in S. B. Greiver and relied on those representations. It is also further alleged in the amended complaint that the plaintiff was "similarly and repeatedly assured" by S. B. Greiver for 11 years, from 1938 to 1949, that "he was continuing to look into their mother's shares in defendant corporation, and was taking care of them," and that notwithstanding the fact that the plaintiff had business experience in the past she had trust and confidence in S. B. Greiver and relied upon his representations. The amended complaint also alleged friendship between Bessie Greiver and her children and Henry Crown and his family in 1919. Henry Crown was one of the original subscribers and since the incorporation of Material Service Corporation and up to the filing of plaintiff's amended complaint had acted as one of the principal officers of defendant Material Service Corporation.

In the amended complaint it is further alleged that in 1949, because of the failure of S. B. Greiver to furnish the plaintiff with "any definite information concerning such shares," plaintiff consulted independent counsel and instituted discovery procedures against

203

Simon Greiver, the secretary of Material Service Corporation, and Material Service Corporation in the Probate Court relating to the said 170 shares. The plaintiff was appointed as administratrix of the estate of Bessie Greiver, and her appointment was later revoked. The plaintiff further alleges that Simon Greiver in the citation proceedings in his testimony denied that his mother had ever subscribed or paid for any shares of stock of the defendant corporation and that he claimed in his testimony that he was the person described as B. Greiver in the original subscription list which was attached to the complaint as an exhibit. It is further alleged that as a result of this discovery citation the plaintiff learned that the defendant Material Service Corporation denied all of the foregoing claims of the plaintiff, "particularly plaintiff's claim that Bessie Greiver, her mother, was the person who was the original subscriber for the said 170 original shares of stock of Material Service Corporation. The plaintiff also learned as a result of these hearings, that the defendant, Material Service Corporation, claimed that the 'B. Greiver' listed in said original subscription list, referred to Simon Greiver, also known as Simeon B. Greiver." It was also alleged that the defendant since its original incorporation has paid to persons other than Bessie Greiver and the plaintiff various dividends on the original 170 shares of its capital stock owned by Bessie Greiver.

The plaintiff prayed that the court should enter a declaratory judgment finding and declaring that Bessie Greiver, also known as B. Greiver, the decedent, during her lifetime subscribed for 170 shares of common stock of the defendant corporation and that Bessie Greiver, also known as B. Greiver, "caused $4,250 for said shares pursuant to her subscription therefor to be paid to the defendant corporation," and that at the death of Bessie Greiver on April 8, 1938 she was the

owner of 170 shares of the common stock of the defendant corporation, or 21¼% of all of the outstanding shares of stock. There is a further prayer that the defendant Material Service Corporation issue a new certificate for the number of shares of its present outstanding capital stock equal to 21¼% thereof, that an accounting should be had to ascertain the amount of dividends that have been paid by the defendant corporation to persons other than Bessie Greiver and the plaintiff, and that the plaintiff should have a money judgment for that amount against the defendant corporation.

Exhibits are attached to the complaint. Exhibit A is a copy of the subscription agreement which shows S. R. Crown subscribing for 360 shares in the amount of $9,000, H. Crown 270 shares in the amount of $6,750, and B. Greiver 170 shares in the amount of $4,250. Exhibits B and C were two stock certificates. Exhibit B shows that B. Greiver had been issued 90 shares of the Material Service Corporation stock on January 27, 1919; exhibit C shows that 40 shares of the said stock had been issued to B. Greiver on the same date. The certificates are signed by S. B. Greiver, secretary, and Sol R. Crown, president. S. B. Greiver's signature has the "S" so intertwined with the "B" that it requires careful inspection to determine that it is not B. Greiver. Attached to each certificate is the stub indicating that the respective stock was issued to B. Greiver and each of the stubs shows a receipt dated January 27, 1919 for the certificates, which receipt is signed by S. B. Greiver. Each of the certificates has "Cancelled" written across the face of the certificate. Exhibit C has below the word "Cancelled" the initials "S.R.C." (S. R. Crown is alleged in the complaint to have died during the year 1921.)

In the final order of the trial court entered on June 30, 1961 the dismissal of the suit on May 26, 1961 was

vacated. The plaintiff was given leave to file her amended complaint instanter, and to add Fanny Friedberg and Simon Greiver as additional parties defendant. It was ordered that the previous motion of the defendant to dismiss the original complaint should stand as its motion to dismiss the amended complaint. After hearing argument of counsel the trial court entered an order sustaining the defendant corporation's motion to strike and dismiss plaintiff's amended complaint, and the order further recites that the plaintiff having thereupon elected to stand upon the amended complaint the amended complaint and plaintiff's action are dismissed as to all defendants and all defendants shall go hence without day. From that order this appeal is taken.

In this court the plaintiff takes the position that the appeal involves the sufficiency of the plaintiff's amended complaint to state a cause of action, as an heir and sole distributee of her deceased mother's estate, which would entitle her to a declaratory judgment and incidental relief, and that a declaratory judgment is the proper remedy to establish the identity of B. Greiver, that said B. Greiver was Bessie Greiver, plaintiff's mother, that her original title to these shares of stock was not lost or forfeited in any manner, and that neither the statute of limitations nor laches could bar her action.

The defendant here contends that the statute of limitations and laches are applicable on the face of the pleadings, that a declaratory judgment is not the proper remedy inasmuch as a declaration of rights with respect to the ownership of certain corporate stock cannot determine in whole or in part any controversy between the parties, and that the plaintiff is attempting to use declaratory judgment procedure improperly in order to fix rights in anticipation of future litigation.

206

■ ■ Whether laches applies to the rights of a plaintiff is determined by the facts of each case. There is no absolute rule as to what constitutes laches. Jones v. Jenkinson, 316 Ill 264, 147 NE 128. Laches has been defined as such neglect or omission to assert a right as taken in conjunction with the lapse of time, more or less great, and any other circumstances as cause prejudice to an adverse party, and it operates as a bar in a court of equity. In Spies v. DeMayo, 396 Ill 255, 72 NE2d 316, the court said:

"As so pertinently observed in McDearmon v. Burnham, 158 Ill 55, referring to delay covering a period of fourteen years, 'When a court of equity is asked to lend its aid in the enforcement of a demand that has become stale, there must be some cogent and weighty reasons presented why it has been permitted to become so. Good faith, conscience and reasonable diligence of the party seeking its relief are the elements that call a court of equity into activity. In the absence of these elements the court remains passive, and declines to extend its relief or aid. It has always been the policy to discountenance *laches* and neglect.' "

In Dempster v. Rosehill Cemetery Co., 206 Ill 261, 68 NE 1070, the court said:

". . . One important principle involved in the term *laches* is, that after a long lapse of years, during which testimony is impaired or destroyed, witnesses remove or die, their recollection is dimmed or lost, and papers, letters, documents, books, records, etc., are lost or destroyed, or if not lost or destroyed are in the hands of persons not familiar with their contents, liable to misinterpret them, unable to supply their defects or correct the same or explain them from the memory of living witnesses, the defendant is at the complete

207

mercy of any claimants who may wish to take advantage of the situation. Time impairs and destroys evidence of the true facts, and makes it practically impossible to meet positive testimony of the complainants, whether the same be true or untrue. A court of equity, therefore, finding itself unable to render substantial justice between the parties, asserts the principle of *laches* on the ground of public policy and for the repose of property rights."

In the instant case the defendant was incorporated in 1919, and 130 shares of original issue of stock are evidenced by certificates which are exhibits attached to the plaintiff's complaint and bear the date of January 27, 1919. Bessie Greiver died in 1938. The complaint states that by his sworn testimony in 1949 Simon Greiver denied that the stock in question was subscribed for by or issued to Bessie Greiver but in fact was subscribed for by and issued to him. The original complaint of the plaintiff was filed September 1, 1959. The plaintiff argues that Bessie Greiver had no knowledge of the alleged misconduct of the defendant in cancelling the stock. In Neagle v. McMullen, 334 Ill 168, 181, 165 NE 605, the court said:

"Equity does not encourage stale claims. (Moore v. Taylor, 251 Ill 468.) This rule is peculiarly applicable where the difficulty of doing entire justice arises through the death of the principal participants in the transaction complained of, or by reason of the original transaction having become so obscure by time as to render the ascertainment of the facts impossible or extremely difficult. (Carlock v. Carlock, 249 Ill 330.) While the general rule is that to charge a party with *laches* in the assertion of an alleged right it is essential that he should have had knowledge of

208

the facts upon which he based his claim, yet if the circumstances are such as to have put him upon inquiry, and the means of ascertaining the truth were readily available upon such inquiry but the party neglected to make it, he will be chargeable with *laches* the same as if he had known the facts. (Ater v. Smith, 245 Ill 57.)"

■ We will first consider as to whether or not laches could be applied to any claim on the part of Bessie Greiver from 1919 until 1938. From the exhibits it appears that the stock must have been cancelled before the death of S. R. Crown in 1921. In the plaintiff's prayer for relief she asks that the defendant issue a certificate for those 130 shares which were cancelled by the company and that the defendant also issue certificates for the additional 40 shares to which she alleges Bessie Greiver was entitled and which had not been issued by the defendant to her. Allegations of a pleading which are contrary to the facts of which judicial notice is taken are not admitted by a motion to strike. In Smyth v. Kaspar American State Bank, 6 Ill App2d 64, 127 NE2d 149, the court said:

"In testing the sufficiency of a pleading we consider the averments of the pleading and the pertinent facts of which courts take judicial notice although not pleaded (People v. Snyder, 279 Ill 435; 41 Am Jur, Pleading, sec 244); or as held in James v. Unknown Trustees, etc., of Three-In-One Oil & Gas Co., 203 Okla 312, 220 P2d 831, the pleadings should be read as incorporating everything of which the courts take judicial notice, though not alleged."

It is alleged that Bessie Greiver was a woman who could not read or write. Nevertheless it can hardly be believed that a woman who, as it is alleged, was

209

acquainted with and was friendly with the Crowns, would not have known of the extraordinary developments of the Material Service Corporation during those years. This is a matter of which this court must take judicial notice. Bessie Greiver slept on her alleged rights for practically 20 years. The plaintiff stands in the shoes of Bessie Greiver insofar as her claim is concerned. From the death of Bessie in 1938 until 1949 the plaintiff also alleges that she was lulled into quietude by representations of her brother Simon that he was taking care of the stock. She was a woman who, as is alleged, had had considerable business experience. During that period Material Service Corporation was becoming a colossal enterprise. Even to a person who did not read the newspapers it would be almost impossible to go upon the streets without encountering trucks or equipment plainly marked with the words "Material Service Corporation." In 1959 Material Service Corporation became a division of General Dynamics. In 1949 plaintiff knew that her brother Simon claimed that the stock had been subscribed for by and issued to him. She also knew that no dividends had been paid either to her or her mother Bessie since the time the stock was issued. Ten years elapsed from the time the plaintiff knew that Simon claimed the stock and that the defendant claimed that neither she nor her mother, under whom she claimed, had any claim against it. During the period of the merger from the latter part of 1958 through and until the filing of the suit in September 1959 the whole matter was widely blazoned forth in the newspapers. It would be utterly unreasonable to claim that the plaintiff, at least for the last ten years, was ignorant of the extraordinary development of the corporation. The circumstances were such as would put the plaintiff "upon inquiry, and the means of ascertaining the truth were readily available." (Neagle

210

v. McMullen, supra.) Nevertheless during the ten-year period from 1949 until the suit was filed in 1959 the plaintiff did nothing. We think it is clearly apparent on the face of the complaint that the plaintiff was guilty of laches. In the amended complaint the plaintiff also alleges that the reason Bessie Greiver made no claim for the stock up until the time of her death was due to the confidence she reposed in her son Simon. Even though we could accept that as an excuse, it nevertheless is no excuse for the failure of the plaintiff to take any legal action. It is true in the complaint she alleges that from the death of her mother in 1949 the plaintiff had "implicit trust and confidence in her brother" and "notwithstanding the fact that she had business experience in the past, she relied on these representations of her brother, and did not question the truth of these representations." In 1949 she was fully informed, according to the allegations of the complaint, of the denial under oath by Simon Greiver that Bessie Greiver had then, or at any time, any right whatsoever in the stock which is the subject matter of this suit. She knew that any claim which she might have had in the stock would be opposed. The plaintiff has in the complaint pleaded nothing which would excuse the fact that she slept on her rights for a period of ten years.

In our opinion the case of Foss v. People's Gas Light Co., 241 Ill 238, 89 NE 351, is controlling. In that case the court sustained a demurrer to the plaintiff's amended bill and the suit was dismissed. The court held that the plaintiff was guilty of gross laches either in making his demand for an accounting or an examination of the books, or in starting his suit, and the court said (p 251):

". . . The acts and omissions on the part of the corporation of which appellant complains are in the main such as would naturally be within his

211

knowledge. If the company had refused to pay the appellant any dividends or otherwise recognize his rights as a stockholder, these facts have been known to appellant during all the years he has been a stockholder. Having knowledge that the company was pursuing a course of conduct in respect to appellant that amounted to a total denial of all his rights as a stockholder, reasonable diligence required that he should have made his appeal to a court of equity before his claim became stale. Wilcoxon v. Wilcoxon, 230 Ill 93."

In Snyder v. Charleston & S. Bridge Co., 65 W Va 1, 63 SE 616, 131 Am St Rep 947, the court said: "It would therefore seem that, if the doctrine of laches can ever be properly invoked in defense of a claim, it is applicable with peculiar force in this case. The plaintiff delayed for six years to take any active steps for the enforcement of his right, knowing for at least five years of that time that he was not recognized by the said company as one of its stockholders. The rights of third parties would be materially changed, if plaintiff were to prevail . . . ." Also see 18 CJS Corporations, sec 524; Boyd County Fair Ass'n v. Eastham, 208 Ky 368, 270 SW 12; Ballenger v. Liberty Nat. Life Ins. Co., 271 Ala 318, 123 So2d 166; Combs v. W. O. Davis Sons Co., 209 Ky 719, 273 SW 483.

In her reply brief the plaintiff attempts to distinguish the Foss case from the case before us on the ground that in the Foss case there was no question of a forged or fraudulent unauthorized assignment of the shareholder's certificates involved. We cannot say that in the case before us such an issue is necessarily involved. It is true that the plaintiff in her amended complaint alleges that Bessie Greiver did not at any time either in person or through agent assign, transfer or convey any of the shares of the capital stock which

she had purchased. There is nothing in the exhibits that indicates that any assignment of the shares was made. This contention begs the question, because it assumes that the shares had been subscribed for by and issued to Bessie Greiver. Nor is it clearly alleged that the shares in question were ever paid for. It is true there is an allegation in the complaint that the decedent sometime during the early part of 1919 caused $4,250 to be paid to the defendant. No time is given when the alleged payment was made, and in any case the allegation represents a conclusion on the part of the pleader and is not admitted by the motion to strike. There is no allegation in the pleadings that at any time any of the shares of stock were in the possession of Bessie Greiver or of the plaintiff. Nor is there any allegation that the issued certificates were actually assigned or that they bore a forged assignment. In order to sustain the distinction made by the plaintiff it would be necessary to first find that the shares of stock which were issued were issued to Bessie Greiver.

The action was brought under section 57.1 of the Civil Practice Act permitting suits to be brought for a declaratory judgment. This section of the Practice Act was first enacted in 1945. The courts have in many cases discussed the question as to whether a suit brought for a declaratory judgment is a suit in law or a suit in equity. Many cases hold that the action is sui generis. Freeport Motor Cas. Co. v. Tharp, 406 Ill 295, 94 NE2d 139; Jones v. Hodges, 2 Ill App2d 509, 119 NE2d 806.

█ In the instant case the plaintiff prays, as affirmative relief, that the defendant shall issue the plaintiff a new certificate for the shares in question and that an accounting should be had to determine the amount of dividends which have been paid by the defendant upon the said stock. In any case there

would be no question that the doctrine of laches may properly be applied to a suit for a declaratory judgment, and particularly in a case such as this which clearly asks for equitable relief. We are basing our decision upon the question of laches and do not discuss the statute of limitations, although the statute of limitations also could properly be applied here.

█ Another question raised by the defendant is whether or not in a case such as that which is before us a suit for declaratory judgment falls properly within the statute. In Trossman v. Trossman, 24 Ill App2d 521, 165 NE2d 368, we said:

> "It has been held that in order for the court to enter a declaratory judgment there must be an actual controversy. Exchange Nat. Bank of Chicago v. County of Cook, 6 Ill2d 419. It is also the law that since the declaratory judgment statute was not designed to supplant existing remedies declaratory relief as a general rule will not be granted for a cause of action which has already accrued which is justiciable in a well-recognized form of action. 16 ILP, Declaratory Judgments, sec 21. It would seem to be clearly apparent that if an action for declaratory judgment could only lie when some other legal remedy was available the passage of the Act would have been idle. Between Scylla and Charybdis there is a narrow but plain channel."

In the Notes to the Declaratory Judgment Act (Smith-Hurd Ill Anno Stat chap 110, sec 57.1, p 222) it was pointed out that the remedy was not designed to supplant existing remedies or to afford a new choice of tribunals.

In the instant case, if the defendant wrongfully cancelled certificates which had been issued and which properly belonged to the plaintiff evidencing the

214

plaintiff's ownership of certain shares of stock of the defendant and had refused to issue other shares, the plaintiff had a cause of action both in law and in equity. The determination of the identity of the person who signed the subscription agreement as B. Greiver could be as readily determined in such an action as in a suit for declaratory judgment. The law does not encourage the trial of causes of action piecemeal. It is our further opinion that an action for declaratory judgment in this case was improvidently brought.

The judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

SCHWARTZ, P. J. and DEMPSEY, J., concur.