ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Plaintiff-Appellant, v. AMOCO OIL COMPANY *et al.*, Defendants-Appellees.

Second District No. 2—01—1201

Opinion filed January 13, 2003.

Earl A. Deutsch, Kenneth W. Funk, Phillip J. Zisook, Brian D. Saucier, and Karen Kavanagh Mack, all of Deutsch, Levy & Engel, Chtrd., of Chicago, for appellant.

Donald F. Hemmesch, Jr., and Christopher B. Kaczynski, both of Smith, Hemmesch, Burke & Brannigan, of Chicago, for appellee Amoco Oil Company.

Eric N. Macey and Elizabeth A. Mayer, both of Novack & Macey, of Chicago, for appellee Mobil Oil Corporation.

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, the Illinois State Toll Highway Authority (ISTHA), appeals from the dismissal of its complaint against Amoco Oil Co. (Amoco) and Mobil Oil Corp. (Mobil). ISTHA sought a declaration that Mobil and Amoco, while operating gasoline stations on ISTHA's property under written agreements with ISTHA, violated the terms of those agreements by spilling petroleum products onto the property.

ISTHA also asked that Mobil and Amoco be ordered to contribute to the costs of remedying the petroleum contamination. We reverse the trial court's dismissal of ISTHA's complaint.

The complaint dismissed by the trial court was ISTHA's fourth amended complaint against Amoco and Mobil. ISTHA alleged therein that it owns various rest stops or "Oases" along the Illinois toll highways. Under leases and operating agreements with ISTHA, Amoco and Mobil have operated gasoline stations at the Oases. Amoco operated the stations from 1957 to November 1985. Mobil has operated the stations from November 1985 to the present. The gasoline storage and dispensing equipment that was the subject of the agreements included underground petroleum storage tanks (USTs) and underground pipe systems and fuel dispensers (collectively, UST systems). ISTHA attached to its complaint copies of the various leases and operating agreements it entered into with Amoco and Mobil during their respective tenures.

ISTHA alleged that Amoco and Mobil caused spillage and leakage of petroleum products while they operated the Oases.

ISTHA alleged that Illinois health and environmental authorities investigated the contamination at the Oases and ordered a cleanup. ISTHA averred that it has "expended significant sums of money to assess, monitor and remediate" the contamination. Specifically, ISTHA alleged that it has incurred "site assessment costs" as low as $200,000 and as high as $500,000 at each Oasis where contamination was found. ISTHA alleged that the Illinois Environmental Protection Agency, pursuant to its authority under the Illinois Environmental Protection Act (Environmental Act) (415 ILCS 5/1 *et seq.* (West 2000)), has demanded that ISTHA propose a remediation plan for the contamination at each Oasis. Each plan, ISTHA asserted, will involve "substantial" additional sums. ISTHA alleged that it, Amoco, and Mobil are jointly liable under the Environmental Act for the contamination of the Oases. ISTHA averred that, despite its demands, Amoco and Mobil have neither acknowledged their duty to assist in the remediation nor compensated ISTHA for the sums it has expended so far.

ISTHA brought claims for declaratory relief and contribution. In its claims for declaratory relief, ISTHA requested a declaration of "the rights and obligations of the parties with respect to the remediation and cleanup" of the Oases. Specifically, ISTHA sought a declaration that Mobil and Amoco are required under the lease and operating agreements to indemnify ISTHA for past and future costs associated with remediation and to cooperate with state authorities until the remediation is complete. ISTHA also sought contribution from Mobil and Amoco under the Illinois Joint Tortfeasor Contribution Act

(Contribution Act) (740 ILCS 100/1 *et seq.* (West 2000)) for the amount it paid in excess of its *pro rata* share of the parties' common liability under the Environmental Act. Finally, ISTHA sought a finding that Mobil and Amoco are "liable for their *pro rata* share of any future liability or expense incurred by [ISTHA] stemming from" the violations of the Environmental Act.

Mobil and Amoco each filed a motion to dismiss ISTHA's complaint under sections 2—615 and 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615, 2—619 (West 2000)). The following arguments for dismissal of the claims for declaratory relief were presented in one or both of the motions: (1) declaratory relief was inappropriate because ISTHA sought a declaration of rights stemming entirely from past conduct; (2) the claims for declaratory relief lacked adequate specificity, and the leases and operating agreements cited in the claims did not support the relief requested; (3) declaratory relief was inappropriate because ISTHA had recourse to an alternative remedy, namely, a cause of action for breach of contract; and (4) the claims for declaratory relief were barred by the applicable statute of limitations and by the doctrine of *laches*.

The following arguments for dismissal of the contribution claims were presented in one or both of the motions: (1) ISTHA's claims against Amoco concerned events that occurred before the effective date of the Contribution Act; (2) ISTHA's claims for contribution against Amoco and Mobil were premature because the liability for which ISTHA sought contribution had not been asserted against it in a lawsuit by a third party; and (3) ISTHA's claims for contribution for sums it has not yet paid or even calculated were premature and non-justiciable. Without providing a rationale, the trial court dismissed ISTHA's complaint with prejudice. ISTHA appeals, and Mobil and Amoco reassert the arguments they pressed in their motions to dismiss. We address first the propriety of the court's dismissal of ISTHA's claims for declaratory relief.

A. The Dismissal of ISTHA's Claims For Declaratory Relief

■ Section 2—701 of the Code, also known as the Declaratory Judgment Act (Act) (735 ILCS 5/2—701(a) (West 2000)), provides in pertinent part:

> "(a) No action or proceeding is open to objection on the ground that a merely declaratory judgment or order is sought thereby. The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any *** contract *** and a declaration of the rights of the parties interested."

Courts have construed the Act as permitting declaratory judgment only where an actual controversy exists and the party seeking relief has a tangible, legal interest in the controversy. *In re Application of the County Treasurer & ex officio County Collector*, 309 Ill. App. 3d 181, 187 (1999). An "actual controversy" is "a concrete dispute that admits of an immediate and definitive determination of the party's rights." *Owner-Operator Independent Drivers Ass'n v. Bower*, 325 Ill. App. 3d 1045, 1051 (2001). The central purpose of declaratory relief is to allow the court to address a controversy one step sooner than normal after a dispute has arisen, but before the plaintiff takes steps that would give rise to a claim for damages or other relief. *Eyman v. McDonough District Hospital*, 245 Ill. App. 3d 394, 396 (1993). The declaratory judgment procedure allows parties to a dispute to learn the consequences of their action before acting. *Eyman*, 245 Ill. App. 3d at 396. The remedy of declaratory judgment is to be liberally applied to provide a method by which a binding declaration of rights may be rendered before the parties make an irrevocable change in position that might jeopardize those rights. *Midwest Petroleum Marketers Ass'n v. City of Chicago*, 82 Ill. App. 3d 494, 499 (1980). The remedy is meant to afford security and relief against uncertainty with a view toward avoiding litigation, not toward aiding it. *Lihosit v. State Farm Mutual Automobile Insurance Co.*, 264 Ill. App. 3d 576, 580 (1993).

■ The court provided no rationale for its dismissal of plaintiff's complaint. An order granting a motion to dismiss without specifying the ground on which it is based places before the appellate court every issue raised in the motion; if any ground raised in the motion is a sufficient basis for the dismissal, the appellate court must affirm. *Williams v. Board of Education of the City of Chicago*, 222 Ill. App. 3d 559, 565 (1991). In the trial court, Mobil and Amoco proffered various reasons why ISTHA's claims for declaratory relief should be dismissed. They reassert them on appeal, and we address them successively. In an unpublished part of this opinion, we address and reject the defendants' arguments that ISTHA's claims for declaratory relief do not present an "actual controversy" as defined by the Act and, alternatively, that the claims are barred under the applicable limitations period and under the doctrine of *laches*.

Amoco and Mobil also argued in their motions to dismiss that ISTHA's claims for declaratory relief were inappropriate because ISTHA had recourse to an alternative remedy (namely, a suit in contract based on the leases and operating agreements), and the "existence of another remedy is sufficient grounds for dismissal of a declaratory judgment action." Assuming that ISTHA could have sought the relief it requests in an action for breach of contract, we

must decide whether the availability of such other relief was a sufficient ground for the dismissal of ISTHA's complaint for declaratory relief.

■ To support their position, Mobil and Amoco cite a case from this district, *Outboard Marine Corp. v. James Chisholm & Sons, Inc.,* 133 Ill. App. 3d 238 (1985). In *Outboard Marine,* the court said:

"A complaint for declaratory judgment which recites in sufficient detail an actual and legal controversy between the parties and prays for a declaration of rights and, if desired, other legal relief, states facts sufficient to state a cause of action [citation], and although the court has discretion to grant declaratory relief, it has no discretion to refuse to entertain the action as against a motion to dismiss where the complaint states a cause of action. [Citation.] The courts have recognized a clear distinction between the trial court's discretionary power to refuse to grant declaratory judgment even though the statute would permit a judgment under the facts, and its refusal to entertain the action as against a motion to dismiss where the complaint states a cause of action. [Citation.]" *Outboard Marine,* 133 Ill. App. 3d at 241.

The court remarked that " '[t]he discretion is not one to entertain the action but to enter or decline to enter the judgment or decree.' " *Outboard Marine,* 133 Ill. App. 3d at 241, quoting *Meyer v. County of Madison,* 7 Ill. App. 3d 289, 291 (1972). The court noted—inconsistently, in our view—that "one way the court can exercise its discretion to decline to enter a declaratory judgment is to dismiss the complaint if it appears from the face of the complaint that there has accrued another existing and well-recognized form of action." *Outboard Marine,* 133 Ill. App. 3d at 241-42. Thus, while "it is well established in Illinois that the existence of another remedy does not preclude declaratory relief," "the existence of another adequate remedy can constitute sufficient grounds for dismissal at the trial court's discretion." *Outboard Marine,* 133 Ill. App. 3d at 247. Defendants rely on the latter proposition in asking us to affirm the trial court's dismissal of ISTHA's complaint.

We decline to follow *Outboard Marine.* First, it simply is internally inconsistent. The only rationale it provides for the rule that the availability of another remedy is a sufficient ground for the dismissal of a claim for declaratory relief rests on an unfounded distinction between a "refusal to entertain" a complaint for declaratory relief and a "dismissal" of that complaint. Second, the rule is contrary to the plain text of the Act and decisions interpreting it.

In the quoted portions above, *Outboard Marine* emphasizes that a trial court faced with a motion to dismiss a complaint for declaratory relief may not dismiss the complaint if it states a cause of action. To

dismiss the complaint would amount to a refusal to entertain the action, which, the court explained, is always impermissible where a complaint for declaratory relief states a cause of action. Several lines later in the opinion, the court describes an occasion where the trial court may dismiss a claim for declaratory relief despite there being a cause of action stated in the complaint. Dismissal is appropriate, explains the court, where another remedy exists. The court describes a dismissal under these circumstances not as "refusing to entertain" the claim for declaratory relief but as "declining to grant" the claim. We see no basis for the distinction. Whether the complaint is dismissed for failure to state a cause of action or because another adequate remedy exists, the dismissal in both instances is based on the face of the complaint. Neither is more or less a refusal to entertain the action than the other, nor is one more or less a refusal to grant the requested relief than the other. If there is a basis for distinguishing between dismissing a facially sufficient complaint for declaratory relief because it fails to state a cause of action and dismissing the complaint because another adequate remedy is available, the basis does not rest in the "refusal to entertain/refusal to grant" distinction.

Outboard Marine, however, provides no other rationale for the notion that a trial court may dismiss a facially valid complaint for declaratory relief simply because there is another adequate remedy available. Outboard Marine does cite three appellate court cases for the proposition: Schlossberg v. E.L. Trendel & Associates, Inc., 63 Ill. App. 3d 939 (1978), Coles-Moultrie Electric Cooperative v. City of Charleston, 8 Ill. App. 3d 441 (1972), and Meyer v. County of Madison, 7 Ill. App. 3d 289 (1972). None of these cases cites adequate authority for the rule. These cases each derive the rule from Goldberg v. Valve Corp. of America, 89 Ill. App. 2d 383 (1967). Goldberg in turn derives the rule from Stern v. Material Service Corp., 44 Ill. App. 2d 198 (1963), and from an Illinois treatise, Illinois Law and Practice. See Goldberg, 89 Ill. App. 2d at 391, citing Stern, 44 Ill. App. 2d 198, and 16 Ill. L. & Prac. Declaratory Judgments § 2 (1967). Stern cites Trossman v. Trossman, 24 Ill. App. 2d 521 (1960). See Stern, 44 Ill. App. 2d at 214, citing Trossman, 24 Ill. App. 2d 521. Trossman relies exclusively on Illinois Law and Practice in stating the rule. See Trossman, 24 Ill. App. 2d at 526, citing 16 Ill. L. & Prac. Declaratory Judgments § 2 (1963). Treatises are not binding on this court. Nowhere in the chain of citations connecting Trossman and Outboard Marine is there a reference to a supreme court case supporting the notion that a trial court may dismiss a complaint for declaratory belief simply because another remedy is available. Our research has uncovered no such case.

What we have found is plentiful authority conflicting with *Outboard Marine*. We begin with the Declaratory Judgment Act itself, which states in relevant part:

"(a) No action or proceeding is open to objection on the ground that a merely declaratory judgment or order is sought thereby. The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation, or of any deed, will, contract or other written instrument, and a declaration of the rights of the parties interested." 735 ILCS 5/2—701(a) (West 2000).

The first sentence declares that a defendant may not object to a proceeding on the ground that the plaintiff sought merely declaratory relief. In other words, a defendant may not object to a proceeding on the ground that the plaintiff did not seek a remedy other than declaratory relief. That, however, is defendants' objection; their complaint is that ISTHA could have sought relief in contract. But the Act clearly disallows the objection that the plaintiff did not seek any remedy other than declaratory relief. Notably, the Act explicitly empowers a court to declare a party's rights under a contract "whether or not any consequential relief is or could be claimed." 735 ILCS 5/2—701(a) (West 2000). Although the Act provides that a court "may" make such declarations, this does not give a trial court discretion to refuse to grant declaratory relief on the sole ground that the plaintiff could have sought another remedy. That ground for refusing to grant declaratory relief is precluded by the first sentence of the Act. When the language of a statute is plain and unambiguous, courts may not read into the statute exceptions, limitations, or other conditions. *In re D.D.*, 196 Ill. 2d 405, 419 (2001). The plain text of the Act makes no provision for the discretion that *Outboard Marine* accords the trial court, and we refuse to read that discretion into the Act. We conclude that the plain text of the Act is irreconcilable with *Outboard Marine*'s affirmation that a trial court may, in its discretion, dismiss a complaint for declaratory relief merely because another remedy is available. The holding in *Outboard Marine* also conflicts with supreme court authority. In *American Civil Liberties Union v. City of Chicago*, 3 Ill. 2d 335 (1954) (hereinafter, *ACLU*), the commissioner of police for the City of Chicago, relying on an anti-obscenity ordinance, refused to issue the plaintiffs' successors in interest a permit to exhibit a certain film. The plaintiffs sued the City of Chicago and certain individuals, seeking both a declaration that the ordinance was unconstitutional and an

injunction to restrain the city from preventing the exhibition of the film. *ACLU*, 3 Ill. 2d at 335-36. In their answer, defendants challenged the plaintiffs' right to a declaratory judgment on the ground that there was an adequate remedy at law by way of *mandamus*. The trial court rejected the argument and entered a decree enjoining the defendants from preventing the exhibition of the film. *ACLU*, 3 Ill. 2d at 337.

The supreme court affirmed the trial court on this point. The court observed that the notion that the availability of *mandamus* precluded declaratory relief was "refuted by the explicit language of [the Declaratory Judgment Act]." *ACLU*, 3 Ill. 2d at 353. In so holding, the court distinguished *Goodyear Tire & Rubber Co. v. Tierney*, 411 Ill. 421 (1952):

> "[*Goodyear Tire*] is not to the contrary. We there held only that a plaintiff desiring to challenge the validity of a tax assessment must pursue the statutory remedies provided by the Revenue Act, and that a declaratory judgment, like an injunction, could not be had in the absence of circumstances supplying a basis for interference with the collection of taxes. The case in no way suggests that an action for declaratory relief is defeated by the mere existence of another form of action which could presently be employed." *ACLU*, 3 Ill. 2d at 353.

Significantly, the version of the Act cited by the court in *ACLU* is, with some exceptions not relevant here, identical to section 2—701(a) of the Code in its present form. Compare 735 ILCS 5/2—701(a) (West 2000) with Ill. Rev. Stat. 1953, ch. 110, par. 181.1.

Some years after *ACLU*, the supreme court explained in *Kupsik v. City of Chicago*, 25 Ill. 2d 595 (1962):

> "In the early days of the declaratory judgment in this country, some courts held that a declaration of rights could not be had if any of the ordinary forms of relief were available. [Citation.] To avoid such a result, our statute, like the Uniform Declaratory Judgment Act, makes it clear that a declaratory judgment is not precluded by the availability of other relief. [Citations.] The declaratory judgment has thus become an optional alternative remedy." *Kupsik*, 25 Ill. 2d at 598.

See also *Kaske v. City of Rockford*, 96 Ill. 2d 298, 305-06 (1983) ("A declaratory judgment is not barred because other relief can be obtained. It is rather an optional, alternative remedy"). The version of the Act that *Kupsik* cited is, with exceptions not relevant here, identical to section 2—701(a). Compare 735 ILCS 5/2—701(a) (West 2000) with Ill. Rev. Stat. 1961, ch. 110, par. 57.1.

In the wake of *ACLU* and *Kupsik*, this district recognized that " '[t]he tendency seems to be to liberalize the use of the declaratory

judgment action and for the court to take jurisdiction, notwithstanding there is an adequate remedy by some other means.' " *Elm Lawn Cemetery Co. v. City of Northlake*, 94 Ill. App. 2d 387, 391 (1968), quoting *Koziol v. Village of Rosemont*, 32 Ill. App. 2d 320, 327-28 (1961). This district further explained:

> " 'The scope of the declaratory judgment remedy should be kept wide and liberal and not restricted by technicalities. The important point is the right and the duty of the courts to grant declaratory relief where, in the interest of the proper administration of justice, it ought to be granted regardless of how the particular action in which the declaratory relief is sought, may be classified. ***
>
> *** The Declaratory Judgment Act was not designed to supplant existing remedies but is an alternative or additional remedy to facilitate the administration of justice.' " *Elm Lawn Cemetery*, 94 Ill. App. 2d at 391-92, quoting *Koziol*, 32 Ill. App. 2d at 327-28.

Subsequently, in *Young v. Hansen*, 118 Ill. App. 2d 1 (1969), another case from this district, the defendants argued that the trial court erred in granting the plaintiff's request for declaratory relief on the ground that another remedy was available to plaintiff. The court disagreed, rejecting the defendants' suggestion that "a declaratory judgment action was not intended to provide a remedy where there are other existing, adequate, recognized remedies." *Young*, 118 Ill. App. 2d at 5. This court affirmed that "the declaratory judgment remedy provides a new, additional, cumulative and alternative procedural method for the judicial determination of substantive rights and duties." *Young*, 118 Ill. App. 2d at 5. Citing *ACLU*, the court stated that the existence of another remedy "is not sufficient to bar [the] right to seek a declaratory judgment." *Young*, 118 Ill. App. 2d at 5, citing *ACLU*, 3 Ill. 2d at 353. The court also stated: "If there is no particular reason for denying the use of this procedure when another remedy is available, the declaratory judgment action should also be available." *Young*, 118 Ill. App. 2d at 6.

We read the latter statement as affirming that a trial court's refusal to grant declaratory relief is permissible only where there is a "particular reason" for the refusal other than the fact that an alternative remedy is available. This district subsequently reaffirmed this position. See *Board of Trustees of the Addison Fire Protection District No. 1. Pension Fund v. Stamp*, 241 Ill. App. 3d 873, 881 (1993) ("A declaratory judgment is an optional remedy which is proper for the resolution of an actual controversy even though other relief *** could be obtained"). This position subsequently was adopted by the First District in *Alderman Drugs, Inc. v. Metropolitan Life Insurance Co.*, 79 Ill. App. 3d 799 (1979). In *Alderman*, the plaintiffs filed a class ac-

tion seeking a declaratory judgment that the defendant's proposed amendment to a contract between them was void. The trial court dismissed the complaint, observing that the contract was terminable at will and that the plaintiffs could remedy their problem simply by terminating the contract. *Alderman*, 79 Ill. App. 3d at 802. The appellate court, remarking that "it seems well established in this state that the existence of another remedy does not preclude declaratory relief," reversed the dismissal. *Alderman*, 79 Ill. App. 3d at 804. "This is true," the court affirmed, "even though the plaintiff could sue for breach of contract." *Alderman*, 79 Ill. App. 3d at 805.

Recently, the Fourth District took the same position. In *AG Farms, Inc. v. American Premier Underwriters, Inc.*, 296 Ill. App. 3d 684 (1998), plaintiffs sought a declaration that defendants had no rights-of-way through plaintiffs' lands. The trial court dismissed the complaint. On appeal, defendants argued that the dismissal was justified because the plaintiffs had another remedy: a suit to quiet title. The court rejected the argument:

> "The cases cited by defendants support the proposition that where the trial court does have the discretion to dismiss, the availability of another remedy justifies the exercise of that discretion. The case law is clear, however, that the existence of another remedy does not preclude a declaratory judgment action. [Citation.] In this case, the availability of a quiet title action alone does not justify dismissal of the action on the pleadings." *AG Farms*, 296 Ill. App. 3d at 692.

Based on the text of the Act and appellate and supreme court precedents, we hold that a trial court may not dismiss a claim for declaratory relief on the sole ground that another remedy is available. Accordingly, we decline to follow *Outboard Marine* and instead hold that the trial court's dismissal of ISTHA's claims for declaratory relief was not justified by the fact that ISTHA had an alternative remedy in contract.

Our holding advances the policies behind the Declaratory Judgment Act. The Act is designed to afford a resolution of disputed rights before action is taken in potential prejudice of those rights. *Phillips v. Hall*, 113 Ill. App. 3d 409, 417 (1983). That purpose can be served just as much when another cause of action is available as when no such action is available. The case at hand illustrates this point well. ISTHA likely could sue in contract for what it has already paid in cleanup costs. ISTHA has alleged, however, that it will incur substantial future costs that it cannot now determine. A binding declaration of ISTHA's rights under its contracts with Mobil and Amoco will help dispel the parties' uncertainty by ensuring that whoever ultimately pays these

costs will do so knowing whether or not it is legally responsible for them.

■ In a related argument, Mobil maintains that ISTHA's claims for declaratory relief are improper because they essentially are contract claims. Mobil cites *Eyman*, 245 Ill. App. 3d at 397, where the First District remarked that "a breach of contract claim is an action at law and is not a proper subject for a declaratory judgment." Mobil also cites another First District case, *Flashner Medical Partnership v. Marketing Management, Inc.*, 189 Ill. App. 3d 45, 54 (1989), where the court held that the plaintiff's claims for breach of contract, fraud, negligence, and violation of an Illinois insurance statute were actions "at law" and hence "not properly before the court in a declaratory judgment action."

Insofar as *Eyman* and *Flashner* are read as holding that a trial court may not adjudicate a claim for a declaration of rights under a contract, they are contrary to law. The Act specifically permits a court to declare the rights of the parties under a contract. See 735 ILCS 5/2—701(a) (West 2000) ("The court may *** make binding declarations of rights *** including the determination *** of the construction of any *** contract *** and a declaration of the rights of the parties interested"). The First District has held in numerous cases that the interpretation of a contract is a proper subject of a declaratory judgment action. See, *e.g.*, *Alderman*, 79 Ill. App. 3d at 803-04 (1st Dist. 1979); *Albright v. Phelan*, 2 Ill. App. 3d 142, 145-46 (1st Dist. 1971). We decline to follow *Eyman* and *Flashner* on this issue and reject Mobil's suggestion that ISTHA's claims under the leases and operating agreements are not proper subjects for declaratory relief.

Having reviewed all possible bases for the trial court's dismissal of ISTHA's claims for declaratory relief and found them insufficient, we hold that the trial court erred in dismissing those claims.

### B. Dismissal of ISTHA's Claims for Contribution

■ ISTHA sought contribution from Mobil and Amoco for the costs of the remediation ordered by the Illinois Environmental Protection Agency pursuant to the Environmental Act. ISTHA alleged in its complaint that it, Mobil, and Amoco are liable under the following provisions in section 12 of the Environmental Act:

"No person shall:

(a) Cause or threaten or allow the discharge of any contaminants into the environment in any State so as to cause or tend to cause water pollution in Illinois ***.

\* \* \*

(d) Deposit any contaminants upon the land in such place and manner so as to create a water pollution hazard." 415 ILCS 5/12(a), (d) (West 2000).

ISTHA alleged that it, Mobil, and Amoco are also liable under the following provisions in section 21 of the Environmental Act:

"No person shall:

(a) Cause or allow the open dumping of any waste.

* * *

(e) Dispose, treat, store or abandon any waste *** except at a site or facility which meets the requirements of this Act and of regulations and standards thereunder." 415 ILCS 5/21(a), (e) (West 2000). State agencies and corporations are included in the Environmental Act's definition of "person." See 415 ILCS 5/3.26 (West 2000). Liability for pollution of land or water extends under the Environmental Act to any person who has control of the source of pollution or who owns or controls the premises where the pollution occurs. *People v. A.J. Davinroy Contractors*, 249 Ill. App. 3d 788, 793 (1993). ISTHA alleges that liability for the leaks and spills of the petroleum products on the Oases extends to it, as owner of the Oases, and to Amoco and Mobil, as operators of the Oases when the contamination occurred.

The Environmental Act requires the owner or operator of a leaking underground petroleum storage tank to repair the leak and "mitigate any threat to human health, human safety or the environment" resulting from the leak. 415 ILCS 5/57.7(c)(1)(A) (West 2000). The Environmental Act prescribes an initial penalty for each violation of its provisions as well as a penalty for each day a violation continues. 415 ILCS 5/42(a) (West 2000). Factors relevant to the calculation of a penalty include "the duration and gravity of the violation" and "the presence or absence of due diligence on the part of the violator in attempting to comply with requirements of [the Environmental Act]." 415 ILCS 5/42(h)(1), (h)(2) (West 2000).

■ ISTHA alleged that it is entitled to contribution from Mobil and Amoco by force of the Illinois Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/1 *et seq.* (West 2000)). Section 2(a) of the Contribution Act provides: "[W]here 2 or more persons are subject to liability in tort arising out of the same injury to person or property, *** there is a right of contribution among them, even though judgment has not been entered against them ***." 740 ILCS 100/2(a) (West 2000). The Contribution Act permits a tortfeasor to recover amounts he has paid in excess of his *pro rata* share of the common liability. 740 ILCS 100/2(b) (West 2000). Liability under the Environmental Act creates the requisite "liability in tort" for purposes of the Contribution Act. *People v. Brockman*, 143 Ill. 2d 351, 373 (1991). The Contribution Act applies only to causes of action arising on or after March 1, 1978. 740 ILCS 100/2 (West 2000).

The trial court granted Amoco's and Mobil's motions to dismiss

the contribution claims but provided no rationale for its decision. We review the dismissal *de novo*. See *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997). An order granting a motion to dismiss without specifying the ground on which it is based places before the appellate court every issue raised in the motion; if any ground raised in the motion is a sufficient basis for the dismissal, the appellate court must affirm. *Williams*, 222 Ill. App. 3d at 565. Mobil and Amoco advanced several arguments in the trial court for dismissal of the contribution claims. We address them in succession.

■ Neither Mobil nor Amoco argues that ISTHA's complaint fails to state allegations that, if proven, would establish that Mobil and Amoco are jointly liable under the Environmental Act for the contamination of the Oases. Rather, their arguments all concern whether ISTHA's complaint is sufficient to state a claim for contribution for ISTHA's costs in remedying the Environmental Act violations.

Amoco argues that ISTHA is not entitled to contribution from Amoco because ISTHA has not alleged any specific leak or spill occurring between March 1, 1978, the effective date of the Contribution Act, and the end of Amoco's lease term in 1984. Amoco points to *Brockman*, where the supreme court upheld the dismissal of a landfill operator's claim for contribution against certain clients who allegedly deposited waste at the landfill in violation of the Environmental Act. The court reasoned that the plaintiff had not alleged "specific dates and occurrences" when it received illegal waste from the defendants after March 1, 1978, but merely had alleged that the deliveries occurred "at various times" between February 4, 1971, and September 29, 1979. See *Brockman*, 143 Ill. 2d at 370. The supreme court held that the complaint was defective for failing to state "any allegations that the misconduct complained of occurred at specific times after March 1, 1978." *Brockman*, 143 Ill. 2d at 370.

*Brockman* is readily distinguishable. There, the plaintiff failed to specify by day, month, or even year any particular instance of the defendants dumping illegal waste at the plaintiff's landfill before, on, or after March 1, 1978. The plaintiff merely alleged that the dumping occurred sometime between two dates eight years apart. Having found a fatal lack of specificity in the plaintiff's allegations, the court in *Brockman* had no occasion to decide whether the plaintiff could seek contribution for waste that the defendants dumped before March 1, 1978, but did not remove from the landfill by March 1, 1978. The Environmental Act imposes liability for continuing violations (415 ILCS 5/42(a) (West 2000)), but the contribution claims of the plaintiff in *Brockman* did not adequately plead any violation of the Environmental Act, much less a violation that continued after March 1, 1978.

Here, however, continuing violations were pleaded. The plaintiff in *Brockman* alleged that the illegal dumping occurred sometime between two dates eight years apart. ISTHA, by contrast, has alleged specific instances of leaks and spills occurring before March 1, 1978. Each instance is identified at least by year; some are identified by year and month, others by year, month, and day. ISTHA further alleges that this contamination "continued, migrated, and exacerbated [*sic*] since March 1, 1978." Thus, while the Contribution Act would not apply to liability under the Environmental Act for contamination occurring before March 1, 1978, ISTHA could receive contribution for a violation that continued on or after March 1, 1978. ISTHA has alleged violations of the Environmental Act that first occurred before, but continued on and after, March 1, 1978. Thus, ISTHA has sufficiently pleaded its entitlement to contribution from Amoco for a violation of the Environmental Act.

Mobil argues that ISTHA's claims for contribution for the costs of remedying the violations are premature because "[n]o claim has been filed or otherwise asserted by anyone seeking to compel [ISTHA] to pay for cleaning and remediating any of the Oases." The Contribution Act, Mobil suggests, "is not a mechanism by which a party that voluntarily chooses to pay money for something is allowed to cause another party to pay too." Mobil asserts that contribution is inappropriate because "[n]o claim has ever been filed or threatened against [ISTHA]" and "[n]o one is 'forcing' [ISTHA] to pay money to remediate the Oases." Amoco makes essentially the same argument.

ISTHA responds that state authorities indeed have asserted a "claim" against it, "forced" it to pay money for remediation, and "threatened" it with consequences should it not complete the remediation. Our purpose here is not to resolve the semantic dispute that underlies much of the argument on this issue. In our view, Mobil's core contention is that a party cannot seek contribution under the Contribution Act for liability that has not been asserted against that party in a lawsuit.

This assertion conflicts starkly with Illinois law. Section 5 of the Contribution Act provides: "[A] cause of action for contribution among joint tortfeasors *** may be asserted by a separate action before or after payment *** by counterclaim or by third-party complaint in a pending action." 740 ILCS 100/5 (West 2000). Contrary to Mobil's assertion that contribution is appropriate only where the party seeking contribution for a sum has been sued for that sum by another party, the plain thrust of the disjunctive in this section is that contribution is entirely proper in the absence of any action other than the contribution action itself. In *Tisoncik v. Szczepankiewicz*, 113 Ill. App. 3d 240,

245 (1983), the appellate court construed the phrase "by a separate action before or after payment" in section 5 as "covering situations where no suit is pending which was initiated by the injured party." *Tisoncik*, 113 Ill. App. 3d at 245. Our supreme court adopted this interpretation of the Contribution Act in *Laue v. Leifheit*, 105 Ill. 2d 191, 196 (1984).

Subsequently, in *Brockman*, the supreme court held that the phrase "subject to liability in tort" in section 2 of the Contribution Act means "that the persons from whom contribution is sought are potentially capable of being held liable in a court of law or equity." *Brockman*, 143 Ill. 2d at 371. The court explained that the potential for liability of the persons from whom contribution is sought depends merely upon the relative culpability of the persons in causing the injury. *Brockman*, 143 Ill. 2d at 371. The court further explained:

> "If the underlying claim does not create liability in tort, a third-party plaintiff may not recover on a contribution claim. [Citation.] Liability is determined at the time of the injury out of which the right to contribution arises, and not at the time the action for contribution is brought. [Citation.] At the time of an injury for which a third-party defendant may be liable in tort, the third-party defendant is in fact 'subject to liability in tort.' However, that liability can be defeated once a defense is established. [Citation.]" *Brockman*, 143 Ill. 2d at 372.

Prior to *Brockman*, the appellate court in *Highland v. Bracken*, 202 Ill. App. 3d 625, 628-29 (1990), expanded on the principle set forth in *Tisoncik* and *Laue*:

> "A contribution action lies *** when (1) a payment is incurred or made in whole or in part on a common obligation, or something is done in the equivalent, so that this payment made by the joint obligor is in excess of his share of the common obligation [citation]; or (2) the party bringing the contribution action *is sued* by a complaining party, giving him notice of the nature and the potential amount of the obligation necessitating the contribution action [citation]." *Highland*, 202 Ill. App. 3d at 628.

The preceding authorities leave no doubt as to when a claim for contribution is appropriate. *Tisoncik* and *Laue* expressly hold that a party seeking contribution for a particular sum need not have been sued for that sum by a third party. By its plain terms, the Contribution Act permits a party to receive contribution for a sum even before he pays it. See 740 ILCS 100/5 (West 2000) (action for contribution permissible "before or after payment"). Further, *Brockman* and *Highland* unambiguously hold that contribution for a sum is appropriate even where no third party has demanded payment of that sum. As *Highland* puts it, the party need only have "incurred" liability for the

sum. See *Highland*, 202 Ill. App. 3d at 628. According to *Brockman*, a party becomes "subject to liability in tort" for purposes of section 2 of the Contribution Act, and is liable for contribution associated with that liability, when the injury occurs that creates the liability. See *Brockman*, 143 Ill. 2d at 372. Plainly, Illinois law does not require that the party seeking contribution have been sued by the injured party. Mobil makes no credible attempt to demonstrate that the law in Illinois is different than as clearly stated in these cases. Instead, Mobil relies on a federal court's interpretation of the Contribution Act. Federal cases are not binding authority in our state courts. *People v. Kidd*, 129 Ill. 2d 432, 457 (1989). The interpretation of the Contribution Act that Mobil urges us to accept was announced in an unpublished case, *Premium Plastics, Inc. v. La Salle National Bank*, No. 92—C—413 (N.D. Ill. December 29, 1992) (mem. op.). There, the court stated:

> "[T]he Contribution Act applies where joint tortfeasors have been found liable or are awaiting judgment in a case, but not *** before a suit is filed against them. It is the 'potential judgment' resulting from the filing of a lawsuit, and not the fear that a lawsuit may be filed, which determines when a joint tortfeasor has a right of contribution." *Premium Plastics*, No. 92—C—413, mem. op. at ___.

This construction of the Contribution Act squarely conflicts with the holdings in *Tisonik*, *Laue*, *Brockman*, and *Highland*, and we therefore reject it. Incidentally, we note that the *Premium Plastics* court embraced the very opposite interpretation in a subsequent published case, *Soo Line R.R. Co. v. Tang Industries, Inc.*, 998 F. Supp. 889, 898 (N.D. Ill. 1998), which, unlike its unpublished predecessor, is precedential (at least for federal courts). Mobil suggests that *Soo Line* misinterpreted *Brockman*, but our view is that *Premium Plastics* did.

Based on clearly established Illinois law, we hold that ISTHA's claims for contribution for the costs of remedying the petroleum contamination at the Oases are not barred by the fact that ISTHA has not been sued for violations of the Environmental Act. ISTHA need only have alleged that it, Mobil, and Amoco are jointly liable under the Environmental Act, which it did.

Mobil's second argument is that, even if ISTHA can seek contribution for liability that has not been asserted against it in litigation by the injured party, it cannot be awarded contribution for the remediation costs it has not yet paid or even estimated. Awarding contribution with respect to these undetermined future sums would, Mobil claims, be an impermissible advisory opinion.

The only authority Mobil cites for this conclusion is a declaration in a factually inapposite case that a court may not "render an advisory

opinion, or give legal advice as to future events" (*Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 375 (1977)). We reject the argument. ISTHA's contribution claims do not call for an advisory opinion. ISTHA seeks contribution for liability that is based entirely on past events, that is, the releases of petroleum products onto the Oases. ISTHA asks that Mobil and Amoco be required to pay their *pro rata* share of the costs of remedying these past leaks and spills. A court deciding a claim for contribution determines each party's *pro rata* share of the common liability by assigning percentages of fault. *Levin v. Seigel & Capitel, Ltd.*, 314 Ill. App. 3d 1050, 1052 (2000). In deciding ISTHA's claim for contribution, the trial court would assign ISTHA, Mobil, and Amoco each a percentage of fault relative to the acts of contamination. Through that allocation of fault, Mobil and Amoco would be apprised of the precise dollar amounts they owe ISTHA for the costs it has already paid as well as their percentage shares of liability for ISTHA's future costs. What Mobil and Amoco owe in respect to those costs will be determined as the costs arise. The trial court need have no share in that purely arithmetical exercise. The court's inability to determine what precise dollar amounts Mobil and Amoco ultimately will owe ISTHA under the Contribution Act would not make its allocation of fault an advisory opinion.

For the reasons stated above, we hold that the trial court erred in dismissing ISTHA's claims for contribution, and we reverse the judgment of the circuit court of Du Page County dismissing ISTHA's complaint.

Reversed.

BYRNE and GROMETER, JJ., concur.